### J. A. HATTER *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

1. RAILROADS. *Master and servant. Character of appliances furnished.*

   Railroads are not required to furnish the safest appliances in use in order to protect their employes from injury.

2. SAME. *Use of appliances. Dangers incident to employment.*

   A master is not liable for injuries sustained by a servant in the use of an appliance, though different from and more dangerous than those generally employed in the service, if the use of such appliance was one of the dangers incident to the employment voluntarily assumed by the servant.

3. SAME. *Dangers incident to employment. Master not liable. Case.*

   A brakeman employed on a freight-train cannot recover for injuries sustained in coupling to his train a locomotive equipped with a coupler, not defective as one of its make, but more dangerous in the use for freight-trains than those generally employed, if the use of such coupler, on certain freight-engines of the company (designed for passenger service on occasion), was not unusual when he entered the employment, and he recognized that he would be required to make couplings with the same.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

Plaintiff, a minor about nineteen years of age, was injured while in the employ of the Illinois Central Railroad Company as a brakeman on a freight-train. He alleged in his declaration in this case that the railroad company was negligent in its duty of furnishing suitable appliances, and that he was injured by reason of a defective coupling. Plea of general issue, with notice that the injury was caused by reason of plaintiff's fault and negligence.

The plaintiff testified that, without negligence on his part, he was injured while making a coupling between the locomotive and a box-car, his arm being caught between the dead-wood of the car and the chafing-iron, which was at-

tached to the coupler of the locomotive; that this chafing-iron was an unsuitable appliance to be used on a locomotive to be coupled with freight-cars having ordinary draw-heads; that it is a piece of iron about five inches wide by one and one-half inches thick, attached to the locomotive, intended to take up the slack between it and the cars, to prevent jars in starting and stopping the train, and is generally used with passenger-trains; that in coupling with a freight-car, this chafing-iron would pass a few inches over the draw-head, and strike the dead-wood of the other car; that the appliance thus used is dangerous, because of liability to catch the hand of the person making the coupling between it and the dead-wood; that the usual method of coupling a locomotive to freight-cars is to lift the link in the coupler of the locomotive, place the pin in the draw-head of the car, and guide the link into the mouth of the stationary draw-head, the concussion causing the pin to drop down, and catch the link; that with this chafing-iron it is impossible to make the coupling in the ordinary way; that the pin could not be set in the draw-head of the stationary car, because the chafing-iron would pass over the draw-head, and knock it out, and, therefore, the reverse of the usual mode is necessary; that it required the link to be changed from the locomotive; that, in this instance, plaintiff was engaged in taking the pin out of the draw-head of the stationary car, so as to make the coupling, when the chafing-iron caught his hand, causing the injury; that, if it had been an ordinary draw-head, there would have been little or no danger, because the draw-heads would have come evenly together, and plaintiff's hand could not have been caught as it was.

Plaintiff testified that he had been in the service but a short time, and had never seen this coupling appliance before that trip; that the locomotive was brought out, and attached to his train at McComb City, plaintiff successfully making the coupling there; that at Canton this locomotive was again assigned to his train for the return trip, and in

making the coupling, he was injured; that he had not been instructed in the use of this kind of a coupler. The accident occurred in the day-time, the appliance was visible, and there were no hidden defects. The locomotive was standing four or five feet from him, and moved in obedience to his command, in order that he might make the coupling.

The effort on the part of plaintiff was to show that the use of a chafing-iron on a locomotive for freight-trains was hazardous, and that this coupling was more dangerous than the coupling of ordinary freight-cars without a chafing-iron. There was no emergency, and no unexpected contingency by which plaintiff was called upon to make the coupling, but it was simply by the use, in connection with freight-cars, of a locomotive intended for passenger-trains, or, rather, to be used with either passenger or freight-trains, that he was hurt.

The court gave a peremptory instruction in favor of defendant, and judgment was entered accordingly, from which plaintiff appeals. The opinion contains a further statement of the facts necessary to an understanding of the case.

*Calhoon & Green*, for appellant,

Filed a lengthy written argument, making the following points:

1. The contract of hiring binds the master to furnish safe and suitable appliances, and he is liable for failure so to do.

2. Mere knowledge, by a servant, of defects, does not relieve the master from liability for his breach of contract.

3. If the servant, with knowledge, continues to serve, without objection, for a sufficient time, then the original contract will be presumed to be substituted by the implied contract, whereby the servant agrees to take the risk of the then known insufficient appliances.

4. This implied contract is based upon the honest belief of the master, produced by the acts of the servant, that the unfitness of the appliances had been agreed to by the latter.

5. Whether the master is relieved from the breach of his

contract by the contributory negligence of the servant, is determinable by the rules applicable to contributory negligence in other cases, and bears no relation to the contract itself. It is an affirmative defense, relieving of liability notwithstanding the breach of contract.

6. It is not *per se* negligence to couple cars because it is dangerous.

7. It is not *per se* contributory negligence to use a dangerous appliance, unless it is of such character that a prudent person would not use it.

8. The use of a known dangerous appliance is not contributory negligence, if, by the use of extra care and skill, the servant has reason to believe he can avoid danger.

9. The servant, by his contract, only assumes the natural risks of the business which may arise, notwithstanding the performance by the master of his duty.

In support of these propositions, counsel cited and reviewed the following authorities: Wood's Master & Servant, §§ 352, 359, ,729, 731, 757, 760; Beach on Con. Neg., 139, 140, 366; 1 Sher. & Redf. on Neg., §§ 214, 215; Patterson's Ry. Ac. L., 342; *Railroad Co.* v. *Hughes,* 49 Miss., 258; *Railroad Co.* v. *Thompson,* 64 *Ib.,* 584; *McMasters* v. *Railroad Co.,* 65 *Ib.,* 264; *Hough* v. *Railway Co.,* 100 U. S., 213.

It is stated in Beach on Contributory Negligence, p. 366, that it is settled that one who is duly advised of the danger of coupling, and still undertakes the work, cannot hold the master liable. The authorities there relied on are based upon the Michigan cases, and in that state the statute requires railroads to transport the cars of other lines, which renders all kinds of couplings necessary. In the Wisconsin cases, cited by Beach, the master knew nothing of the defect, and did not furnish the cars. This whole subject is ably reviewed in *Gottlieb* v. *Railroad Co.,* 100 N. Y., 462, and we invite attention to that case.

The later decisions hold that it is the master's duty to furnish safe appliances, and, though the defect be apparent, the

servant does not take the risk of danger as to the same by virtue of his employment. See 95 N. Y., 546; 100 U. S., 213; 1 Sher. & Redf. on Neg., 214.

*Mayes & Harris,* for appellee.

Where an employe, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain of subsequent injury by the exposure. By contracting for the performance of hazardous duties, he assumes such risks as are incident to their discharge. He is bound to take notice of the ordinary operation of natural laws, and must use his eyes to see that which is open and apparent. This rule applies to minor servants. 14 Am. & Eng. Enc. L., 842.

The servant takes the risk of the master's mode of conducting his business, though a safer one might be followed, if he fully knows the risk and continues to work. *Ib.,* 845. See also the following cases : 41 Ark., 382; 31 Cal., 376; 57 *Ib.,* 15; 77 Ill., 365; 84 *Ib.,* 430; 107 *Ib.,* 44; 114 *Ib.,* 244; 55 Iowa, 671; 29 Conn., 548; 125 Mass., 79; 135 *Ib.,* 418; 139 *Ib.,* 580; 140 *Ib.,* 201; 41 Md., 298; 100 Ind., 293; 45 Mich., 212; 49 *Ib.,* 465; 53 *Ib.,* 125; 34 Minn., 94; 39 *Ib.,* 78; *Ib.,* 435; 71 Mo., 66; 49 N. Y., 521; 1 Lans. (N. Y.), 108; 105 N. Y., 26; 76 Pa. St., 390; 92 *Ib.,* 276; 111 *Ib.,* 343; 12 R. I., 112; 53 Wis., 661; 58 *Ib.,* 1; Thompson on Neg., vol. 2, p. 989.

One of the most recent, and one of the most philosophical, discussions of this subject is to be found in the supreme judicial court of Massachusetts, in the case of *Fitzgerald* v. *Paper Co.,* 29 N. E. Rep., 464, also reported in 34 Central Law Journal, p. 172.

The appliance here was a simple, plain affair, and perfectly visible. It was sound, and of the ordinary pattern. Plaintiff was fully informed as to how couplings were made with couplers of that character. The accident occurred in daylight; the locomotive was standing close to him, and moved

under his direction. There was no emergency, no unexpected and unknown contingency suddenly arising. The case does not differ, in any essential particular, from the numerous cases in which, under like circumstances, it has been held that no recovery can be had.

*M. Green*, for appellant, made an oral argument.

COOPER, J., delivered the opinion of the court.

The complaint of the appellant was not that the coupler used by the defendant company was defective as one of its kind, but that it was of a kind more dangerous in its use than those of another sort. But it was proved by the defendant, and not controverted by the plaintiff, that the use of this coupler (one with a chafing-iron attached) was not unusual when the plaintiff entered into its service; that there were several of its freight-engines so equipped, which were intended to be used upon passenger-trains as occasion might require. The plaintiff himself seems to have recognized the fact that in his employment as brakeman he would be required to couple cars to engines having these chafing-irons, for he informed himself touching the methods by which couplings with such engines could best be made. We find no room for doubt that the use of this appliance was one of the dangers incident to his employment, and voluntarily assumed by him. To hold the employer liable for the injury sustained would, as it appears to us, be to declare that railroads are responsible for injuries to their servants in all cases in which the safest appliances in use are not secured by them. We do not understand that counsel for appellant would push the rule contended for by them to this extent, and we know of no authority by which it could be done.

The peremptory instruction for the defendant was correct, upon the uncontroverted facts of this case.

*Judgment affirmed.*