## JOSEPH A. COIN v. JOHN H. TALGE LOUNGE COMPANY, Appellant.

### Division Two, July 13, 1909.

1. **MASTER AND SERVANT: Appliances.** The master is bound to use reasonable care and precaution to furnish his servants safe appliances with which to do their work, and to keep them in good order and condition.

2. ———: ———: **Assumption of Risk.** The servant does not assume the risk of danger from the use of unsafe machinery, unless the defects are so glaring and obvious that a reasonably prudent man would not attempt to use them.

3. ———: ———: **Newest.** The master is not bound to furnish the newest and best appliances for the use of his servant. He performs his duty when he provides those of ordinary character and of reasonable safety. And, in regard to the style of the implement or the nature of the mode of performance of any work, "reasonably safe" means safe according to the uses and habits and ordinary risks of the business.

4. ———: ———: **Insurers: Liability.** The master is not an insurer of the safety of his servant, or of the safety of the appliances. He is liable for consequences in the use of the machinery, not of danger, but of negligence; and the unbend-

ing test of negligence, in the methods, machinery and appliances, is the ordinary usage of the business. No man is held to a higher degree of care or skill than a fair average of his trade or profession.

5. ———: ———: Extra Hazard: Band Saw. The circumstances of this case, where plaintiff, while at work in a lounge factory, was injured when a band saw came off of the wheel to which it was attached, do not show that his employment was extra hazardous, and therefore his employment does not take his case out of the general rule.

6. ———: Negligence: Two Causes. Where two conditions existed, either of which might have caused the accident to the servant, for one of which the master may be held responsible, and for the other of which he cannot be, the plaintiff must show with reasonable certainty that the cause for which the master is liable produced the result, and the other should not be submitted to the jury.

7. ———: Appliances: Promise to Repair Defect. Where a master has expressly promised to repair a defect in the machinery, the servant can recover for an injury caused by the defective machinery within such period of time after the promise as it would be reasonable to allow for its performance, and for an injury suffered in any period which would not preclude all reasonable expectation that the promise would be kept. But the essential element of that rule is that the machinery or appliance is defective, and that the defect was one which it was the duty of the master to repair or remedy. It does not apply if the promise was to furnish additional appliances or guards to a machine not defective. Where plaintiff's testimony is that he had discovered, on examination, that the band saw at which he worked could be made safer and better by the addition of a guard or shield, and that he spoke to the superintendent about the matter and he promised to provide a shield or guard if he would continue to work, he cannot recover on the promise alone, if without the guard there was no defect in the saw or the wheels to which it was attached, even though he continued to work in reliance upon the promise.

8. ———: ———: ———: Not Relying Upon Promise. If defendant was not induced to continue to work in reliance upon the master's promise to repair a defect in the machine, he cannot recover alone on the failure of the master to keep that promise.

9. ———: ———: Proximate Cause. Where the servant's injury is not traceable to the coming off of the band saw as its proximate cause, but to the manner in which he handled it after it fell to the floor dead, he cannot recover because of defects in the band saw machinery.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

REVERSED.

*M. U. Hayden* and *Rusk & Stringfellow* for appellant.

(1) The duty of the master to use ordinary care to furnish his servants with reasonably safe appliances is not a contractual obligation. It is a duty imposed by law. It arises by operation of law, because of the relation of master and servant, and not by virtue of the contract of employment. Gawne v. Bicknell, 162 Fed. 587; Obanheim v. Arbuckle, 81 N. Y. Supp. 133; Dempsey v. Sawyer, 95 Me. 295; Louisville Hotel Co. v. Kaltenbrun, 80 S. W. 1163; Stewart v. Harmon, 70 Atl. 335; Curtis v. McNair, 173 Mo. 280; Phippin v. Railroad, 196 Mo. 347; Hollenbeck v. Railroad, 141 Mo. 109; Rodney v. Railroad, 127 Mo. 684; Williams v. Railroad, 119 Mo. 322; York v. Railroad, 117 Mo. 412; Rutledge v. Railroad, 110 Mo. 319; Miller v. Railroad, 109 Mo. 357; Schaub v. Railroad, 106 Mo. 87; Steffen v. Mayer, 96 Mo. 423. (2) Having furnished Coin with the kind of machine customarily used by experienced men in the same line of business, defendant was in the exercise of reasonable care. Customary use among reasonably well-regulated concerns is the conclusive test of reasonable care. Berning v. Medart, 56 Mo. App. 449; Railroad v. Lonergan, 118 Ill. 41; Dooner v. Canal Co., 171 Pa. 598; Bldg. Wks. v. Nuttall, 119 Pa. St. 158; Richmond v. Ford, 94 Va. 640; Railroad v. Mauzy, 98 Va. 692; Breig v. Railroad, 98 Mich. 225; Minnier v. Railroad, 167 Mo. 119. (3) Since, therefore, the absence of a guard cannot be considered a defect, in what light can we consider this case that will disclose an obligation on the part of the Lounge Company to furnish a guard? The master

is not bound to furnish the "safest" appliances or machinery. Grattis v. Railroad, 153 Mo. 404; Glover v. Meinrath, 133 Mo. 304; Steinhauser v. Spraul, 127 Mo. 562; Tabler v. Railroad, 93 Mo. 85; Porter v. Railroad, 71 Mo. 66; Cagney v. Railroad, 69 Mo. 416; Berning v. Medart, 56 Mo. App. 443; Brick Co. v. Sobkowiak, 45 Ill. App. 317; Logging Co. v. Schneider, 74 Fed. 195; Davis v. Augusta, 92 Ga. 712; Kent v. Railroad, 77 Miss. 494. Nor the best. Chrismer v. Tel. Co., 194 Mo. 189; Minnier v. Railroad, 167 Mo. 119; Friel v. Railroad, 115 Mo. 507; Payne v. Reese, 100 Pa. St. 301; Kennedy v. Coal Co., 200 Pa. St. 1; Railroad v. Orr, 84 Ind. 50; Strattner v. Elec. Co. (Del.), 50 Atl. 57; Burns v. Railroad, 69 Ia. 450; Kreider v. Pulp Co., 110 Wis. 645; Louisville, Etc., v. Clemonts (Ky.), 109 S. W. 308. Nor "to resort to the safest methods for its operation." Glover v. Meinrath, 133 Mo. 304; Payne v. Reese, 100 Pa. St. 306; Gowan v. Harley, 56 Fed. 982; Berns v. Coal Co., 27 W. Va. 1. c. 300; Spencer v. Bruner, 126 Mo. App. 94. The master cannot be charged with negligence because a safer or less dangerous mode might have been adopted. Winkler v. Box Co., 137 Mo. 400; Glover v. Meinrath, 133 Mo. 304; Minnier v. Railroad, 167 Mo. 120; Smith v. Railroad, 69 Mo. 37; Wendell v. Railroad, 100 Mo. App. 561; Worheide v. Car Co., 32 Mo. App. 371; Conway v. Railroad, 24 Mo. App. 235; Muirhead v. Railroad, 19 Mo. App. 646. The master is not liable "because a particular accident might have been prevented by some special device or precaution not in common use." Minnier v. Railroad, 167 Mo. 119; Grattis v. Railroad, 153 Mo. 380; Augerstein v. Jones, 139 Pa. St. 183; Railroad v. Lonergan, 118 Ill. 50; Rosa v. Volkening, 72 N. Y. Supp. 236; Dooner v. Canal Co., 171 Pa. St. 605; Ross v. Cordage Co., 164 Mass. 257; Paper Co. v. Webb, 146 Ind. 316; Leonard v. Collins, 70 N. Y. 90; D'Arcy v. Railroad, 54 N. Y. Supp. 553. The master is not bound to supply his servants with ap-

pliances not in general use. Brands v. Car Co. (Mo.), 112 S. W. 511; Grattis v. Railroad, 153 Mo. 405; Coal Co. v. Hayes, 128 Pa. St. 294; Ship Bldg. Wks. v. Nuttall, 119 Pa. St. 149; Railroad v. Lonergan, 118 Ill. 50; Mfg. Co. v. Ballou, 71 Ill. 417; Sappenfield v. Railroad, 91 Cal. 48; Burns v. Railroad, 69 Ia. 450; Railroad v. Hall, 91 Ala. 112. "It is a well-settled rule that when an appliance or machine, not obviously dangerous, has been in daily use for a long time, and has uniformly proved safe and efficient, its use may be continued without the imputation of imprudence or carelessness." Sappenfield v. Railroad, 91 Cal. 48; Railroad v. McCormick, 74 Ind. 446; Coal Co. v. Hayes, 128 Pa. St. 294; Railroad v. Probst, 83 Ala. 518; Burke v. Witherbee, 98 N. Y. 562. When an injury cannot reasonably be anticipated and would not have happened except under exceptional circumstances, it is not negligence to fail to take precautionary measures to prevent it, although if taken the injury would not have resulted. Trigg v. Land Co., 187 Mo. 227; Glover v. Bolt Co., 153 Mo. 327; Am. Brew. Co. v. Talbot, 141 Mo. 683; Anderson v. Box Co., 103 Mo. App. 387; Wendell v. Railroad, 100 Mo. App. 559; Hewitt v. Flint, 67 Mich. 61; Robertson v. Ford (Ind.), 74 N. E. 3 (unguarded shaft). A master owes his servant no duty to furnish new appliances. Railroad v. Gormley, 27 S. W. 1051; Innes v. Milwaukee, 96 Wis. 173. The master is not obliged to make alterations or additions to secure greater safety, if the appliance furnished is reasonably safe. Brosman v. Railroad, 113 Pa. St. 500; Railroad v. Driscoll, 176 Ill. 334; Lemoine v. Aldrich, 177 Mass. 89; Jacobson v. Cornelius, 5 N. Y. Supp. 306; DeForest v. Jewett, 88 N. Y. 264; Gibson v. Railroad, 63 N. Y. 449; Sweeney v. Env. Co., 101 N. Y. 520. (4) At the time the alleged promise is said to have been given, no duty rested on defendant to furnish plaintiff a guard. A promise to repair, remedy or alter is not binding unless it rests

on an omission of a duty. Leonard v. Herrman, 195 Pa. St. 222; Higgins v. Fanning, 195 Pa. St. 599; Nealand v. Railroad, 53 N. E. 137; Jones v. Railroad, 43 So. 813; Sweeney v. Berlin Env. Co., 101 N. Y. 520; Vogt v. Honstain, 83 N. W. 533; Gowan v. Harley, 56 Fed. 973; Webber v. Piper, 109 N. Y. 496; Marean v. Railroad, 167 Pa. St. 220; Railroad v. Turner, 23 S. W. 146; Belleville Stone Co. v. Mooney, 38 Atl. 835; U. S. Sugar Refinery v. Welcher, 123 Ill. App. 374. (5) The promise must have been the inducing motive which kept the servant at work and without which he would have quit. Otherwise the promise is not binding. Harris v. Bottum, 70 Atl. 287; Carlson v. Walsh, 67 N. Y. Supp. 516; Railroad v. Lash, 21 S. W. 563; Trotter v. Chattanooga Furn. Co., 47 S. W. 424; Int. Pkg. Co. v. Kasimir Kretowicz, 119 Ill. App. 488; Railroad v. Turner, 23 S. W. 146; Lewis v. Railroad, 153 Mass. 73.

*James W. Boyd* and *C. F. Strop* for respondent.

(1) The contention of appellant that the master frees himself from liability if he furnishes appliances usually in use or adopts rules in the management of the business such as are generally in vogue is not an unbending rule and does not apply if the employment is of an especially hazardous nature. Mather v. Rillston, 156 U. S. 391; Railroad v. McDaniels, 107 U. S. 454; Railroad v. Behymer, 189 U. S. 468. (2) It is not necessary that the servant in complaining of the defect, should have threatened to quit the master's employment, nor that he should have said in so many words that he apprehended danger to himself. It is sufficient that the servant was induced to remain in the master's service by reason of the promise, etc. Rothenberger v. N. W. Milling Co., 57 Minn. 461; Pieart v. Railroad, 82 Ia. 161; Yerkes v. Railroad, 112 Wis. 184; Thorpe v. Railroad, 89 Mo. 664. (3) Re-

spondent was entitled to have had the jury pass upon the question of negligence on account of the defective rubber band and the improper alignment of the wheels. The trial court at the suggestion of the appellant erred in holding that it required specific proof upon the question that the injury was caused by such defect. The evidence showed that the danger of plaintiff's employment was greatly increased by these defects, and that plaintiff's injuries were reasonably and probably to be attributed to these defects. In this state of the evidence the question as to whether the defects actually caused the injury should have been submitted to the jury. Buesching v. Gaslight Co., 73 Mo. 230; Duerst v. Stamping Co., 163 Mo. 622; Hudson v. Railroad, 32 Mo. App. 676; Cambron v. Railroad, 165 Mo. 558; Coombs Co. v. Block, 130 Mo. 668; Settle v. Railroad, 127 Mo. 341; Longree v. Mfg. Co., 120 Mo. App. 494. (4) The attempted distinction between the agreement to furnish new appliances, and the agreement to remedy defective appliances, is without merit, has no real foundation to support it, and the great weight of authority, both of text-books and well-considered cases, sustains the position of respondent; nor does such special promise change the cause of action from one of tort to one of contract. 1 Labatt on Master and Servant, p. 1186; Cooley on Torts, sec. 559; 1 Shearman and Redfield on Negligence (5 Ed.), sec. 215, p. 374; 2 Bailey's Personal Injuries, sec. 3073, p. 1038, and sec. 3112a, p. 1055; Hyatt v. Railroad, 19 Mo. App. 294; Homestake Min. Co. v. Fullerton, 69 Fed. 929; Drop Forge and Fdy. Co. v. Van Dam, 149 Ill. 342; Brownfield v. Hughes, 128 Pa. St. 194; Brown v. Musser Sauntry, etc., Co. (Minn.), 116 N. W. 218; Shea v. Seattle Lumber Co. (Wash.), 91 Pac. 623; Anderson v. Fielding (Minn.), 99 N. W. 358; Barney Dumping Boat Co. v. Clarke, 112 Fed. 923; Phillips v. Michael (Ind.), 39 N. E. 669; Stephenson v. Duncan, 73 Wis. 404; Schlitz v. Pabst

Brewing Co., 57 Minn. 303; Altham v. Schwab Mfg. Co., 104 N. Y. Supp. 349; Swift v. O'Neill (Ill.), 58 N. E. 417.

GANTT, P. J.—This is an action for damages from personal injuries received by the plaintiff, who was at the time an employee of the defendant company, which was engaged in the manufacture of lounges and folding beds, and in connection with said manufacture operated or caused to be operated certain band saws for the purpose of cutting the wood according to various designs for said lounges and beds.

In substance the plaintiff states that he was an employee of said defendant and engaged as an operator upon one of said band saws and that the motive power of said saw was furnished from the central steam plant owned and controlled by defendant; that the saw upon which plaintiff worked was propelled by and upon two wheels, around which wheels the said saw ran. That said saw was intended to and supposed to run around the center of the outside surface of each of said wheels, which were some distance apart; that said machine or appliance was so constructed that by the adjustment of said wheels said saw would be held in position and all of the slack taken therefrom, thereby causing said saw to become a tight band around said wheels. That in order to operate said saw successfully and with reasonable safety to the employee, it was necessary that the same should be suspended perpendicularly and it was necessary that said wheels be so adjusted and set that the one was directly over the other and perpendicular therefrom; that in connection with the upper one of said wheels there was a set screw, a regulating or adjusting screw, which was used for the purpose of expanding said saw and for the purpose of raising said wheel so as to cause said expansion; that there was also in connection with said wheel an automatic weight or safety

appliance which was used and intended to be used and which had the effect, when in proper working condition, of automatically adjusting the distance between said wheels and keeping all the slack out of said band saw. Plaintiff states that said saw and wheels and set screws and automatic adjusting appliances and all parts of said machinery had become old and worn and unfit for use, so that it was difficult in operating said saw to keep the wheels around which said saw revolved in proper position, and was and had become difficult to keep the slack out of the saw and keep it in position, whereby the tendency of said saw was to run off of said wheels when in actual use for cutting timbers of wood.

Plaintiff states that there is always danger in operating a band saw constructed after the manner in which this one was, of said saw leaving the wheels around which it runs and slipping therefrom and the slipping therefrom is always attended by danger to the operator; that the frame upon which said wheels were fastened was improperly and poorly constructed and the wheels did not have a correct alignment and that said frame was old, bent and warped and that said wheels did not run directly over each other and did not track with each other, which had the effect of causing said saw to leave said wheels and endanger the safety of plaintiff; that defendant knew of this condition of the saw and that said appliances were old and worn and improperly constructed and that said band or cushion around said upper wheel had become worn and unfit for use, and well knew the tendency of the saw to leave said wheels, and if it did the person operating the same would be in danger. That said saw and machinery upon which the same was worked could have easily been provided with a shield or protection which would have in no wise interfered with the successful operation of said saw and would have removed all danger

from the operator in charge thereof, even if the saw left the wheels, irrespective of what might have caused the saw to leave the wheels; that such shields were in general use and well known by defendant prior to the time plaintiff received his injuries.

Plaintiff states that prior to the happening of the accident, he requested the defendant's superintendent, Mr. Eddins, to provide shields and screens for said machinery and said superintendent promised and agreed to so equip said saws and machinery, but failed to do so, and in reliance upon said promises plaintiff continued to operate said machine.

Plaintiff states that he also called the attention of the superintendent to the condition of the rubber band around said wheel and to the fact that the condition of said wheel, caused by said defective rubber band, would likely cause the saw to leave the wheel and endanger plaintiff, and the defendant's superintendent promised and agreed to correct said defect, but failed to do so.

Plaintiff states defendant was guilty of negligence in permitting said wheels to be out of alignment and in using the frame which was improperly constructed and which had become bent and warped, and permitting the adjusting screw and automatic appliances to become out of repair and in permitting the aforesaid rubber band to become worn, stretched and out of position and in using the same when it was unfit for use and in failing to repair the same after promising so to do. And in failing to provide shields and screens in front of said machinery after being requested so to do.

Plaintiff states that on the 14th of September, 1905, while he was operating the aforesaid saw and while in the exercise of due care on his part, the aforesaid saw slipped off of the aforesaid wheel and struck plaintiff and plaintiff became entangled

while the same was in motion, and after the same had left the said wheel, and thereby said saw cut, maimed and mangled plaintiff's left arm in such a manner that plaintiff will be a cripple for life. And said arm has become useless and almost paralyzed. Plaintiff laid his damages at $25,000.

The answer of the defendant is a general denial with pleas of assumption of risks and contributory negligence.

On the trial all the instructions asked by the plaintiff submitting the charges of negligence made in the petition were refused by the court and thereupon the court submitted the case to the jury on an instruction given by itself in the following words:

"The court instructs the jury that the law did not require the defendant to provide guards to prevent the band saw from striking the plaintiff; but in this case the plaintiff claims that he requested the defendant, a short time prior to the happening of the accident to him, to furnish or equip said machines with gates and that the defendant promised and agreed with plaintiff to so equip said band saw and instructed the plaintiff to continue working therewith until the defendant had sufficient time in which to so equip said band saw with gates and that the defendant assured plaintiff that he could proceed with his work with safety without said gates until they could be provided. And plaintiff, relying upon said assurances and said promise, continued to operate said machine.

"Upon this charge of negligence and this charge alone the case is submitted to the jury.

"If, therefore, the jury believe and find from the evidence that the plaintiff did request the defendant to furnish or equip said band saw with gates, and that the defendant did promise and agree with plaintiff to so equip said machine and instructed plaintiff to continue working therewith, until the defendant had a sufficient time to so equip said band with gates and as-

sured plaintiff that he could proceed with his work with safety, until the said gates could be provided, and the plaintiff relying upon said assurances and said promise, continued to operate said machine; and you, further find from the evidence that the defendant negligently and carelessly failed to so provide said band saw with gates; and that such gates or guard, if provided, would have prevented the accident and injury to plaintiff shown in the evidence, then the plaintiff is entitled to recover in this case and your verdict should be for him.''

The evidence tended to show that the plaintiff, Joseph A. Coin, was twenty-three years of age, a woodworker by trade, and had been employed in the factory of the defendant for eight years; that he was a roustabout for two and a half years, and was then put to work on machines, working first on the carving machine; that he then began to use the band saw three or three and a half years before the accident out of which this action arose; that during these three and a half years his work was confined to the band saw and the carving machine; that he was an expert operator on the band saw; that he operated the band saw to suit himself, adjusting it in any way he wanted it, had entire charge of and control over it for three years immediately prior to the accident; that it was his place to adjust it to suit himself when he was running it; that there was no machinist or any other person in the factory, whose duty it was to inspect, adjust or align the machine, to braze broken saws, or to put in repair bands on the wheels when needed or remove the ridges that necessarily form on the rubber bands from use; that those were the duties of the man who operated the machine. Plaintiff testified that one of the rubber bands around the wheel upon which the band saw ran had become worn, had ridges in it and had become loose from the wheel, and that he had called the attention of the foreman to the condition of

this rubber band, and he always had agreed to have it repaired.

Plaintiff testified that while he had no knowledge of what appliances or safe devices were in general use, he did know that in another plant in the city of St. Joseph, there was a safety device which consisted of shields or gates which could be closed or opened in front of the band saw, and which had the effect of preventing the saw from injuring the operator in case it left the wheels; that he had called the attention of his foreman to this device which he had seen at the Huttig-Moss factory in St. Joseph, and on several occasions had been promised by the foreman that the machine on which plaintiff worked should be provided with such appliances, and that he had continued to work upon the strength of the promises made to him.

Plaintiff explained his injury as follows: He was sawing a lounge leg; that he pulled the board back and the saw came off and fell on the floor near him to one side and slipped behind him, the saw was still in the board he had been sawing, but was entirely off both wheels. It was lying on the floor not revolving or moving except to palpitate slightly, because the lower edge of the lower wheel in its revolutions touched the saw. He stepped back and caught the left leg of his trousers in the teeth of the saw, he picked up the saw and attempted to throw it from him, but in doing this caused the other part of the saw to catch in the lower wheel and the part in his hand cut his arm and lacerated it. He says: "I thought I was going to catch and I reached down and lifted the saw to get it loose from my pants, I tried to throw it away from me and as I let go it cut me. Q. When you threw it from you it went into the wheel? A. Yes, sir."

No other witness saw the accident. The saw was found broken into two pieces; one piece was sticking in the board which plaintiff had been sawing, and the other piece was entangled in the lower wheel and

wrapped around its hub. The only evidence the plaintiff himself gave touching any defect in the machine was that the rubber band on the upper wheel was loose. He produced two witnesses, Sanborn and McGee, who testified that the loose band would have a tendency to make the saw come off. The plaintiff's testimony that the rubber band was actually loose was not corroborated by any other witness and was contradicted by all the other witnesses who were present in the shop at the time of the accident.

Various witnesses, both for the plaintiff and defendant, testified that a saw will frequently come off in spite of all you can do, and many reasons would cause it to come off, such as the wheels being out of alignment, and the band having ridges on it.

Sanborn, a witness for the plaintiff, testified that he had formerly worked at this shop of the defendant, but had left it some five or six months before the accident to plaintiff. He also testified that five years before this time he had helped set up this machine, that at that time the boxes of the machine were immovable and the wheels could not be aligned. He did not know anything about the wheel at the time of the accident. This inability to make the wheels align was the only defect he found in the machine, he did not consider it dangerous on that account, but simply told the foreman the saws did not run properly. All the other witnesses contradicted his testimony in regard to the saw having immovable boxes and could not be properly aligned. Thus Mr. Crooks, a witness who had been operating band saws for about forty years, testified, "Well, when we first got it there they had some one else to run it and they could not get it to align, it being new, so Mr. Talge come to me and says, 'Harry, get that saw to running,' and I said, 'All right,' and in fifteen minutes I did so, in perfect alignment and good order." This witness also testified that he operated the adjoining band saw and that this machine had

always been adjustable and first-class in every respect, both the upper and lower wheels being adjustable.

Various other expert witnesses and machinists from other shops examined and tested the machine by the plumb-line test and found it to have adjustable wheels easily alignable at the pleasure of the operator and in perfect alignment. Two factory inspectors, Gamm and Pickel, had a plumb-line test made and found the wheels in perfect alignment. All witnesses testified that this saw could remain on the wheels but a short time, indeed not to exceed one revolution of the wheels, after it was out of alignment. There was no direct testimony, either that the wheels were out of alignment at the time of the accident, or that the cause of the saw coming off was non-alignment or mis-alignment, or that the coming off of the saw was the cause of the accident.

In regard to the use of guards to protect the workmen on machines like this one, the testimony was that no guard had ever been used in this shop. Crooks, the other band sawer, with forty years' experience, had used one in 1866, and had discarded it as too much trouble and had never seen one since 1866. Plaintiff had used this saw without a guard for over three years. He testified that some five or six months before this accident, he had seen a gate swinging in front of a wheel of a band saw at the Huttig-Moss factory and had told the foreman about it, and the foreman said it was a pretty good thing, and then the plaintiff asked him if he would put on a shield; the foreman said he was busy then, but would as soon as possible. Nothing more was said about it until the day before the accident, when speaking to the foreman about the rubber band being loose, he says he reminded the foreman of these shields or guards, and the foreman said when he fixed one he would fix the other, and that the saw was safe enough to work with. The foreman swore that no such conversation as the plaintiff

testified to had ever taken place. That plaintiff had never complained of the rubber band being loose and had never asked for a shield or guard and had never complained of any other defect in the machine; but plaintiff on this guard question introduced two other witnesses. Sanborn testified that there were several devices, one was a gate of iron or wood, another was a two-by-four gate swung across the face of the wheel, and still another was a wooden button on the frame of the machine, and at one time he stated that these were in general use in the big factories. On cross-examination, however, he testified that he had worked on band saws off and on for seventeen or eighteen years in different States, California, Washington and Missouri, and in ten shops, and had visited and examined many other shops and machines, and in all that time and experience he had actually seen just one guard and slat gate and that one in San Francisco fifteen years ago. McGee, plaintiff's other witness, had worked in several shops in St. Joseph and had been in shops in Kansas City and Chicago and he had seen just one machine with a guard and that one was improvised by the workman who used it. He would not testify that these guards were in general use.

On the other hand, the defendant introduced sixteen witnesses, men of age and experience who qualified themselves to testify to the customary usage and they stated that band saws were customarily used without guards. These witnesses included, among others, two factory inspectors, whose duties required them to inspect and visit every shop in the State, and the foreman of the Huttig-Moss factory where one of the only three guards was located. This customary usage covered not only St. Joseph, Atchison, Topeka, Kansas City and St. Louis and other cities in this State, but Colorado Springs, Duluth, Chicago, New York and other cities in New York State. It also showed that no manufactur of band saws ever furnishes a guard,

shield or gate with a band saw. Mosteller testified that in his opinion, an attempt to confine the saw close to the wheels and prevent its coming clear off and falling dead, would be only added danger. Other witnesses testified to the same effect and that no guard could prevent the saw from falling just as it did. Mr. Miller, the foreman of the Huttig-Moss factory, in which plaintiff saw the guard, was not permitted to state the reason why said guard was used in his factory, but did testify that they always used these band saws without a guard.

Inasmuch as the court confined the jury to the negligence and carelessness of the defendant in failing to provide said band saws with gates after having promised and agreed with plaintiff to so equip said band saw, a reference to the testimony on that subject will be helpful in determining the propriety of the court's instructions. Plaintiff testified that the foreman assured him that the saw was perfectly safe to work on until repaired. This statement is said to have been made when Coin's complaint to the foreman was about the alleged loose rubber bands and there was only an incidental reminder of the conversation five or six months before about the gate being a good thing. And in this logical connection a fair inference would be that this alleged assurance of safety referred to the rubber band and not to the absence of a gate or guard. Thus counsel inquired of him if he ever called the foreman's attention to the condition of the rubber band, and he answered that he did twice, about a week before he got hurt, the first time, and the day before, the last time. "Q. What did you say and what did he say to you? A. I asked him about having it fixed and he said he would have it fixed as soon as possible. Q. On the second occasion what did you say to him? A. I asked him to take and have it fixed again, and he said, 'Alright, I will do it.' Q. What did he say about using the saw, if anything? A. He

told me that the saw was safe to work on. Q. Did he say anything about when he would have it fixed? A. He said he would as soon as he could get time, is all he said. He said he would take and fix it right away.''

Now, in regard to the gate or guard he was asked if he had ever had any talk about devices of any kind to prevent the saw from coming off and striking the operator, and he answered that he did more than once. As to the first time he said, ''I do not remember exactly, but it was in the first part of the summer or spring when I reminded him of this rubber. I also reminded him of what he promised about putting the guard on and he said when he fixed one he would fix the other, and he says, 'The saw was safe to work on until it is fixed.' Q. Was anything else said? A. No, sir.''

Other facts may be noted in the course of the opinion, but the foregoing is substantially the evidence in the case.

I. The contention of the plaintiff is that he suffered his injuries on account of the negligence of the defendant in failing to furnish him proper and safe appliances with which to do his work, and that this duty upon the part of the defendant was not performed by its furnishing appliances that were ordinarily and reasonably safe for the character of work which he was employed to do. It is the settled law of this State that the master is bound to use reasonable care and precaution to furnish his servant safe appliances with which to do his work, and in keeping them in good order and condition, and the servant does not assume the risk of danger from the use of unsafe machinery, unless the defects are so glaring and obvious that a reasonably prudent man would not attempt to use them. All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordi-

nary character and of reasonable safety, and the former is the test of the latter. For in regard to the style of the implement or nature of the mode of performance of any work, "reasonably safe" means safe according to the usages and habits and ordinary risks of the business. Absolute safety is unattainable and employers are not insurers. They are liable for consequences not of danger but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by the law to a higher degree of skill than a fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. [Steinhauser v. Spraul, 127 Mo. l. c. 562; Minnier v. Railroad, 167 Mo. l. c. 112; Chrismer v. Bell Tel. Co., 194 Mo. 189; Brands v. St. Louis Car Co., 213 Mo. 698.]

The contention of the plaintiff in this case that his employment takes him out of this rule because his employment was extra hazardous, and therefore a greater degree of care was due him, we think is not supported by the testimony. We see nothing in the facts of the cases or in the history of this character of a machine which would justify us in denominating it as extra hazardous. In Curtis v. McNair, 173 Mo. l. c. 280, it was said by this court: "It is the duty of the master to exercise reasonable care commensurate with the nature of the business to protect its servants from the hazards incident to it. This duty the law imposes on the master and will not allow him to cast off," and this statement of the law was approved in Phippin v. Railroad, 196 Mo. l. c. 347. Negligence

is a relative term and where there is no duty, there can be no actionable negligence. When we come, then, to measure the defendant's liability in this case, it will be seen from the accompanying statement that there was no evidence of any defect in this machine at the time of the accident except the defendant's testimony that there was a loose rubber band on one of the wheels and that only to the extent of about six inches of the band. From the evidence it appears that this band was attached to this wheel by some kind of cement and the great weight of the evidence was to the effect that the fact that this part of the band was loose furnished no reason for the saw coming off of the wheel.

In regard to the alignment of the two wheels, we think the circuit court was correct in declining to submit that as a question of fact and negligence to the jury. Common sense and common reason confirm the testimony of all the other credible witnesses that one revolution of the wheel only would have been necessary to have thrown this band saw off of the wheel, if these two wheels had not been aligned properly, and the court refused to submit, and we think properly so, to the jury whether the accident was caused by the band being loose on the wheel. The circuit court found that as to the rubber band, while plaintiff testified it was loose for a space of six inches, that is to say, loose in the sense that the cement that was on the band did not hold for six inches, which condition it is claimed might have caused the saw to come off, yet the testimony of plaintiff's witnesses also showed that another condition existed at the same time, which was equally liable to cause the saw to come off, namely, the ridges on the band, a condition for which it was uncontroverted the defendant was not liable, and the circuit court therefore held that where two conditions existed, either of which might have caused the saw to come off, for one of which the defendant might have been held responsible, and for the other of which the

defendant could not be held responsible, there was nothing to submit to the jury on that point.

There was also evidence tending to show that the plaintiff had pulled the saw off in handling the lounge leg which he was using. It is conceded by the plaintiff that no human agency could detect and demonstrate what the exact cause of the saw leaving the wheel was. The trial court was right in holding that where an accident may have been caused by either of two things, for one of which the master is responsible, and for the other the master is not responsible, the master cannot be held liable. [Trigg v. Land & Lumber Co., 187 Mo. 227.] With the plaintiff's concession that no human being could demonstrate the cause of this saw leaving the wheel at this time, and the testimony of the plaintiff's own witnesses, that it might have been thrown off either by the ridges on the rubber, or by the want of alignment, and that it would come off in spite of either of these defects, we see no escape from the conclusion which the circuit court reached, that that question ought not to be submitted to the jury. In Warner v. Railroad, 178 Mo. l. c. 134, it was said: "If the injury may have resulted from one of two causes, for one of which, and not the other, the defendant is liable, the plaintiff must show with reasonable certainty, that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action." The proposition advanced by the plaintiff, that it is not always necessary to prove a case by direct testimony, and that it would be sufficient to show by indirect evidence that an injury was caused by proved negligent conduct, is all well enough, and is fully sustained by the numerous cases cited by plaintiff, but that is a very different proposition from the one just announced, that where an action is brought for damages, which are occasioned by one or two causes for one of which the defendant is responsible,

and for the other not, the plaintiff must fail if his evidence fails to show that the damages were produced by the first, or at least the probabilities are stronger that the damages were caused by the first instead of the latter. [Fuchs v. St. Louis, 133 Mo. l. c. 196; Patton v. Railroad, 179 U. S. 658.]

Agreeing then with the learned circuit court that there was nothing in the charge that the wheels upon which the saw revolved were not properly aligned, and agreeing also that in view of the testimony of the witnesses for the plaintiff that the leaving of the wheel by the saw could not be attributed to the fact that the cement was loosened for about six inches on the rubber band, we are brought to the issue which the court of its own motion submitted to the jury in its instruction, to-wit, that if the plaintiff requested the defendant to furnish him a shield or guard for the said band saw, and that if the defendant promised and agreed with plaintiff to so equip said machine, but negligently and carelessly failed to so provide said band saw with said gate, guard or screen and that if such gate or guard had been provided they would have prevented the accident to plaintiff, then plaintiff was entitled to recover. As already said, an employer is under no obligation to his employee to furnish the newest and best machinery or implements for his work. The legal test of reasonable safety in machinery or methods, is customary use by those engaged in like employment and work, and the jury cannot be permitted to set up any other. An employer is under an obligation to use reasonable care to furnish his employee with reasonably safe machinery and appliances, but it is not in every case for the jury to determine the standard of safety. The master's obligation arises from his relation of master to his servant and is cast upon him by the law and not as a matter of contract. It is a duty which the master is not allowed to escape by contract with his servant. The trial court having

determined from the evidence that there was no evidence of any such defects in the appliances with which plaintiff was working as would constitute negligence on the part of the defendant, the case is narrowed down to the proposition that the defendant voluntarily, upon the request of the plaintiff, agreed to furnish or equip the said band saw with gates or guards and that if plaintiff was injured because such gates or guards were not provided then the defendant is liable in this action. It seems to us that if there can be any ground-work for this action at all, it must rest upon a promise to repair as known in our law of negligence.

In numerous cases in this State the rule as announced by Shearman & Redfield on Negligence, that where a master has expressly promised to repair a *defect* the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and for the injury suffered in any period which would not preclude all reasonable expectation that the promise might be kept, has been approved. [Conroy v. Iron Works, 62 Mo. 35; Flynn v. Railroad, 78 Mo. 195; Holloran v. Iron & Foundry Co., 133 Mo. l. c. 479, 480.] It will be noted that an essential element of this rule is that there must be a *defect* in the appliances or machinery, which it was the duty of the employer to repair and remedy. This must be evident, because, in the absence of such a defect, we would simply have an appliance which, though not the most modern, would still not be defective in the sense that a master would be liable for not remedying it.

In Leonard v. Hermann, 195 Pa. St. 222, the Supreme Court of Pennsylvania among other things said: "The plaintiff was familiar with the elevator in the use of which he was injured. He had been employed at the defendant's works for a number of years, and he had operated the elevator for at least

one year.  There was not the slightest evidence that the elevator was out of repair, and the overwhelming evidence was that it was of a kind in ordinary use. There was no room for doubt on these subjects, and there was nothing which would have warranted a contrary finding by the jury.  The plaintiff's main reliance was upon his testimony that a week before the accident he had told the superintendent that there should be guards at the sides of the elevator, and that the superintendent had promised to provide them.  But this testimony could not help the plaintiff's case unless it appeared that there was in fact a defect which it was the duty of the employer to remedy.` This did not appear, and no promise made by the defendant could give rise to a duty not recognized by law.  The instruction by the learned judge was clearly right, and the judgment is affirmed.''

In Higgins v. Fanning, 195 Pa. St. 599, it appeared that the plaintiff had worked three or four days operating a mangle in a laundry.  Testimony showed the machine jerked and jarred.  There was complaint and promise to rectify this condition.  The court said: ''In the absence of proof of defects which added to the danger of the operation of the mangle, the promise by one of the defendants to fix it imposed no liability on them.  As it did not appear that the legal duty to furnish reasonably safe machinery and appliances had been violated, there was no ground upon which they could be held liable for plaintiff's loss.  The judgment is reversed.''

In Jones v. Railroad, 43 So. 813, it appeared that the plaintiff's father was killed by the derailment of an engine caused by striking a cow.  The engine was equipped with a stub pilot, which it was alleged was too short and which had a stationary coupler bar, which interfered with the throwing off of the track of the objects struck.  There was a complaint and a promise to substitute safer and less dangerous appli-

ances. Said the Supreme Court of Mississippi: ''The appliance in itself was not defective or unsafe. The change desired in the appliance, which it is contended the railroad promised should be made, if it be conceded, if the facts show there was a promise, was not a defect called to their attention and a promise to repair a *defect* existing in the appliance, but was a promise to change from a safe to a safer appliance. In all the cases cited by the learned counsel for the appellant the facts show that where there was a promise to repair and the master was held liable, it was a promise to repair an existing defect, admittedly so. The proof in this case utterly fails to show that the pilot in use was in any sense a defective pilot. In the language of the case of Hatter v. Railroad, 69 Miss. 642, 'to hold the employer liable for the injury sustained, would, as it appears to us, be to declare that railroads are responsible for injuries to their servants in all cases in which the safest appliances in use are not secured them.' We cannot so hold.'' [Sweeney v. B. & J. Envelope Co., 101 N. Y. 520.]

In a very exhaustive and able discussion of this point by counsel for the defendant many other decisions from the highest courts of the Union have been cited, all tending to the same result as those we have just noted.

The rule itself is an exception to the general rule that the servant when he enters the employment of his master assumes not only the risks incident to his employment but all dangers which are apparent and obvious as a result thereof. It is the duty of the servant to take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly or heedlessly to his work, but must inform himself. If the servant before he enters the service knows, or if he afterwards discovers, or by the exercise of ordinary observation or reasonable skill or diligence in his department of service he may dis-

cover, that the machine or appliances in connection with which he is to labor are unsafe or unfit, and if notwithstanding such knowledge he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of danger thus known and to waive any damages against the master in case it shall result in injury to him. It is out of this principle that this promise to repair has grown; its office is simply to rebut the defense of assumption of risk. But a careful examination of the authorities leads us to the conclusion that this doctrine of a promise to repair does not apply to a case where the promise is made to furnish additional appliances to a machine not defective. While it is true that Labatt in his work on Master and Servant, page 1186, states that there is apparently no adequate ground upon which it can be maintained that a promise to furnish other instrumentalities in place of those from which the servant apprehends danger should not be deemed equivalent in its legal effect to a promise to remedy a defect in some instrumentality, the use of which is to be continued, an examination of the authorities upon which the learned author bases his statement will show that in each instance the promise was to replace a defective appliance or part of an appliance with a sound part. Thus in one case the promise was to furnish a new dog on a machine in place of a worn-out dog, and this was held properly to be a promise to repair. But in this case the promise was not to repair a machine, which the court found, and the evidence showed, was not a defective machine, but was to supply an appliance in the shape of a guard, and, as we have seen, in the absence of a defect, which it was not the duty of the defendant to remedy, and therefore the promise of the superintendent to furnish this guard was without consideration and could not

give rise to a duty not recognized by law. The testimony of the plaintiff on this point was to the effect that he had discovered a better and safer appliance than that which he was required to work with and he sought to have the defendant adopt this new style of machinery, and as we have seen, the law did not require the defendant to do this and the servant had no right to dictate it.

Plaintiff had worked with this machine for three years, he was fully and thoroughly acquainted with its use and management, and we do not agree with counsel for the plaintiff that this was an antiquated machine, it may not have been the very latest and newest design, but it was not a defective machine, and the plaintiff having accepted employment to work with this machine and having worked on it for three years, could not require the defendant to make changes by providing new and different appliances, but must be held to have assumed by his contract of employment the usual and ordinary dangers in operating said band saw.

But there is another view of this case, which will prevent a recovery by the plaintiff. Giving to the plaintiff's evidence its full import, it does not appear to us that this promise of the superintendent to furnish this gate at some time was the inducement to the plaintiff to remain in the service of the defendant. In order to bring his case within the doctrine of a promise to repair, the authorities are quite numerous to the effect that the promise must have been the inducing motive which kept the servant at work and without which he would have quit, otherwise it is not binding. [Holloran v. Iron & Foundary Co., 133 Mo. 470; Yerkes v. Railroad (Wis.), 88 N. W. 33.]

It follows that in our opinion the trial court submitted this cause to the jury upon an issue not justified by the pleadings or the evidence. The instruction permitted the recovery based upon a promise which

was not founded upon any defect in the appliances or in any increased hazard, and the evidence did not justify the inference that the plaintiff intended to quit the employment and would have quit, but for the inducement held out to him by the promise. That the plaintiff has suffered a very serious and painful and perhaps permanent injury, we think the evidence fully justified. But on the other hand that injury does not appear to us to be traceable to the coming off of this band saw as its proximate cause. Obviously when the saw left the wheels, it ceased to revolve and fell upon the floor dead and to all intents and purposes harmless, if plaintiff had only by the slightest act thrown off the power, but instead of so doing he picked up the saw and attempted to throw it from him and in so doing caused it to become entangled in the lower wheel and thus drawn across his arm whereby the teeth of the saw lacerated and tore the flesh and the tendons. It was certainly an unprecedented accident and a most unfortunate one, but it does not appear to us that it was due to any negligence of the defendant. In our opinion the circuit court properly held that there was no evidence upon which to submit the case to the jury upon the allegations of negligence in the petition, and improperly evolved a theory of the case which was not justified by the law or the evidence.

And accordingly the judgment of the circuit court must be and is reversed.

*Burgess* and *Fox, JJ.,* concur.