## WILLIAM MANN, Respondent, v. PHOENIX BRICK & CONSTRUCTION CO., Appellant.

Kansas City Court of Appeals, November 7, 1910.

1. **MASTER AND SERVANT: Negligence: Duty.** Negligence is a relative term and where there is no duty owing to the servant by the master, there can be no negligence.

2. ————: **Blasting: Request for Repairs: Negligence.** If an experienced servant in charge and control of blasting with the use of electric wires, requests additional wire in order that he may be reasonably safe in prosecuting the work, and the master furnishes more wire, the servant accepting and using it without complaint, the master is justified in the belief that he has complied with the request, and is not guilty of negligence.

3. **MASTER AND SERVANT: Negligence: Measurement of Distance.** A mere guess should not be allowed control over uncontradicted measurement.

Appeal from Buchanan Circuit Court.—*Hon. L. J. Eastin,* Judge.

REVERSED.

*Rusk & Stringfellow* for appellant.

*Frank H. Miller* and *Chas. C. Crow* for respondent.

ELLISON, J.—This is an action by a servant against his master to recover damages for personal injuries alleged to have been caused by the negligence of the latter. A trial resulted in a verdict for plaintiff in the sum of $5750. Plaintiff remitted $1275 and judgment was entered in his favor for $4475.

The injury occurred April 14, 1908. Defendant was a manufacturer of paving brick in St. Joseph and obtained its material from a shale bank near its brick yard. This bank was about eighty feet high and faced

west.   At the top was a bed of clay eighteen or twenty
feet thick; then followed a stratum of rock ten or
eleven feet thick, then a bed of shale extending to the
bottom of the bank.   Plaintiff, a blaster of twenty-
three years experience, was in charge of the work of
blasting the shale used in the brick yard.   He had
worked on that bank for six years and was his own
master.   Defendant required him to keep the plant
supplied with shale and allowed him to perform that
duty in his own way.   He was an expert and knew as
much as his employer of the nature of the work and
of the best methods to be pursued.   He began that
season's work in February.   First, he stripped back
the clay and rock in order to expose a ledge of shale,
then in March he began blasting shale.   He drilled
three holes ten feet deep in the shale ledge, charged
them with powder and exploded the shots.   The effect
was to break off the top of the ledge to the depth of
ten feet and of a length of about 125 feet north and
south.   Later he drilled three holes in the new ledge
thus formed and blasted off another section of ten feet.
This formed a third ledge approximately fifty feet from
the top of the bank and thirty feet from the bottom.
Into this ledge he drilled three holes, charged them with
powder and exploded the charges.   One of the results
of this explosion was the injuries of which plaintiff
complains.   After drilling the holes, plaintiff put in
each one a small stick of dynamite and exploded these
charges for the purpose of forming a chamber at the
bottom of each hole for the reception of the blasting
powder.   Then he put in the powder, using six kegs for
three holes.   The explosions of these charges were
made at the same instant by means of an electrical ap-
paratus.   A device to produce an electric spark was
inserted in each charge.   A wire ran from the device
to the top of the ground.   These wires were connected
together and to a lead wire at the other end of which

was attached a small box called the exploder. When
ready to fire, plaintiff carried this exploder as far as
the length of the lead wire would permit and to what
he deemed the safest place and exploded the charges
by throwing a switch in the exploder and thereby
sending a current of electricity to the spark devices.
In selecting his position plaintiff went north along a
sort of pathway afforded by the remnant of the first
ledge of shale. This way was about twenty feet above
the ledge where the shots were placed and plaintiff
stopped at a point about eighty feet north of the shots.
He stated that he stopped there because that was as
far as the lead wire would permit him to go. The
face of the wall was very steep but not quite perpen-
dicular. Plaintiff stood on a narrow ledge and there
was a slight slope backward of the wall above him
which consisted of clay. The concussion produced by
the explosion caused a quantity of the clay to be de-
tached from the bank and to fall on plaintiff, knocking
him from his place and causing him to roll to the bot-
tom of the bank.

When plaintiff commenced work that season he
found that his lead wire was only seventy-five feet
long, and, believing that it was too short for safe blast-
ing, he informed defendant of the situation and asked
for more wire.

The petition states as the basis of plaintiff's cause
of action that he was furnished one hundred feet of
wire, and that length he knew, as an experienced
blaster, was too short for safety, and that he requested
defendant to supply more wire and that the latter
promised to do so but did not. That notwithstanding
plaintiff knew the hundred feet was too short for safe-
ty, he, upon receiving the promise of more, continued
to blast, thinking that by being careful in seeking a
proper place of security, he would be safe; and finally,
on the 14th of April, he was injured as before stated.

On the face of the petition the allegation is that plaintiff knew the wire was too short and asked for more, which plaintiff promised to furnish but failed to do so.

The testimony in plaintiff's behalf, especially that given by himself, differs from this in most important matters, and the difference leaves plaintiff without legal standing. He testified that when he complained of the length of the wire and requested more, there was delay in furnishing it and he repeated his request several times, when, finally, some time before he was hurt, defendant supplied additional wire. It was stated in argument that he was dissatisfied with this, that after splicing it to what he had been using it was still too short and that he asked for more and that more was promised but not furnished. His testimony does not sustain that statement. His testimony discloses that his only requests for more wire were made *before* any was furnished to him and that the only objection or criticism he made when it was given to him was as to its weight or thickness, that it was too light; and that, of course, had nothing to do with his injury.

But it is said that if this be true, yet defendant should be held to blame for not furnishing the length of wire he asked for. He testified that he asked for from seventy-five to one hundred feet more, and that that meant double that length, since, in order to use the electric spark, there must be two wires so as to complete the circuit. It is true that he said he estimated that the new wire furnished him only added, when doubled, twenty-five feet to the old one. But he stated that it was a mere guess and that he had never measured it. Now it was clearly shown that he was furnished with a new spool of wire, containing 155 feet, and it was further shown that it was measured by others after it had been doubled and that it was seventy-seven and

one-half feet long. It thus appears that he was furnished two an one-half feet more wire than what he stated to defendant would be sufficient, for, as already stated, his request was for seventy-five or one hundred feet. A mere guess should not be allowed control over uncontradicted measurement. [Moore on Facts, secs. 414, 415.]

The facts are that here was a man of long experience in blasting and that he was not under control or order from any one as to how or when he should set off a blast, or prepare the ground therefor, and that he was furnished all the material he asked in carrying on his work, and that the defendant, after furnishing him the additional wire, never knew that it was not satisfactory.

Defendant owed no duty to plaintiff after he furnished the additional wire, for it had no reason to doubt that the quantity met plaintiff's approval. The case therefore furnishes no ground for the charge that defendant was negligent; for "Negligence is a relative term and where there is no duty, there can be no actual negligence." [Coin v. Lounge Co., 222 Mo. 488, 506.]

When an experienced servant, in charge and control of certain work for the master, requests additional material, of a simple nature, in order that he may be reasonably safe in prosecuting the work, and the master furnishes additional material, the servant accepting and using it without complaint, the master is justified in the belief that he has complied with the request and is not guilty of negligence.

Defendant, had it seen fit, could have refused to comply with plaintiff's request, as in Coin v. Lounge Co., supra, and Higgins v. Fanning, 195 Pa. St. 599, and yet made its contest before a jury on the ground that it was not negligent because the original wire was sufficient. And so we may leave out of considera-

tion any question of plaintiff being guilty of contributory negligence, as was done in Purcell v. Tennent Shoe Co., 187 Mo. 276, 290, and place our decision, as we do, upon the ground that the evidence of plaintiff himself shows the charge of negligence against the defendant cannot be sustained.

After a full examination of the record and consideration of arguments of counsel, we have concluded that plaintiff's case is without legal support, and hence reverse the judgment. The other judges concur.