MARGARET E. JEWELL, Respondent, v. EXCELSIOR POWDER MANUFACTURING CO., Appellant.

Kansas City Court of Appeals, April 4, 1910.

1. **MASTER AND SERVANT: Negligence: Sufficiency of Evidence: Proximate Cause: Contributory Negligence: Assumption of Risk.** Deceased was employed by defendant at its powder mill. He had charge of a "corning mill," in which cakes of powder were broken into grains. The machinery was operated by electricity. He started his mill by going from its building to the motor house, and there throwing an electric switch, which was not so constructed as to prevent sparks emitted therefrom striking the hand or gloves of the person throwing the switch. There was no powder in the motor house, but the gloves and clothes of deceased were necessarily filled with inflammable powder dust. On the occasion of his death, he had been in the motor house evidently to throw the electric switch. When first seen his clothing was ablaze and he was running from the motor house toward a hydrant. In so doing he passed close to and on the windward side of the corning mill building. The wind blew a spark from his clothes and it ignited the powder in the building, and the resulting explosion caused his death. If he had gone on the other side of this building the fire would not have been communicated to the powder. Plaintiff, the widow of deceased, sued defendant for his death. Her petition charged that the fire was caused by defendant's negligence in the construction and maintenance of the electric switch. Defendants answer contained a clause that the fire was caused by plaintiff's negligence in the use of said switch, or by the lighting of a match. The court non-suited plaintiff, but, on motion, set the same aside. *Held*, (a) There was enough evidence in the case to authorize the submission to the jury of the issue as to whether or not defendant had exercised due care. (b) The evidence was sufficient to authorize a finding that defendant's negligence was the proximate cause of the death. (c) The risk of injury from working with the switch in question was not one of the risks assumed by deceased. (d) Deceased was not guilty of negligence as a matter of law.

Jewell v. Manufacturing Co.

2. ——————: ——————: ——————. The master is not an insurer of the safety of his servant, but is required to exercise only reasonable care for his safety. Within the bounds of reasonable care the master can conduct his business in his own way, and he is not bound to adopt the newest or safest appliances, provided those used are reasonably safe. The servant assumes the risks of injury incident to his employment as conducted by the master while the master acts with reasonable care. The greater the hazards the greater the exactions of reasonable care on both master and servant.

3. NEGLIGENCE: Pleading: Specific Allegations: Sufficiency of Evidence. While a plaintiff charging negligence specially must prove his case as alleged, yet there was sufficient circumstantial evidence to support a finding that the clothes of deceased were set on fire by a spark, and the admissions in the answer limit the source of this spark to the particular switch described in the petition, or to a match.

4. ——————: ——————: ——————: Conjecture. While the evidence must show with reasonable certainty what was the cause of an injury and the jury cannot be permitted to resort to conjecture in ascertaining that cause, neither should the court resort to conjecture to aid the defense by injecting a possible but improbable non-culpable cause of the injury.

5. ——————: ——————: Contributory Negligence: Sudden Peril. Deceased was not guilty of negligence as a matter of law in the manner of using the switch. Neither was he so negligent in running on the wrong side of the building after his clothing was aflame. Where one is under the complete mastery of the instinct of self preservation he cannot be condemned for failure to exhibit good judgment.

Appeal from Jackson Circuit Court.—*Hon. Clyde Taylor,* Special Judge.

AFFIRMED.

*Kinealy & Kinealy* and *E. Wright Taylor* for appellant.

(1) All the evidence in the case having been offered by respondent, she is bound by the testimony of the witnesses, which is uncontradicted. Claflin v. Dodson, 111 Mo. 195; Bensberg v. Harris, 46 Mo. App. 404; St.

Louis v. Kansas City, 110 Mo. App. 653. (2) The petition alleges that the clothing of respondent's deceased husband became on fire from an electric switch, and as the evidence only shows that they became on fire from some unidentified one of several possible sources the court properly instructed the jury to find for the defendant. Orcutt v. Building Co., 201 Mo. 424; McGrath v. Transit Co., 197 Mo. 97; Trigg v. L. & L. Co., 187 Mo. 227; Purcell v. Shoe Co., 187 Mo. 276; Goransson v. Manufacturing Co., 186 Mo. 300; Warner v. Railway 178 Mo. 125; Morgan v. Temagami Co., 136 Mo. App. 241, 117 S. W. 90; Thornberry v. Mining Co., 126 Mo. App. 660; Caudle v. Kirkbride, 117 Mo. App. 412; Smart v. Kansas City, 91 Mo. App. 586; Bigelow v. Railway, 48 Mo. App. 367; Chemical Co. v. Lackawanna Line, 78 Mo. App. 305; Moore v. Renick, 95 Mo. App. 202; Yarnall v. Railroad, 113 Mo. 570; Bompart v. Lucas, 32 Mo. 123. (3) The evidence failed to show that the switch complained of was not reasonably sufficient for the purpose for which it was furnished, or that defendant had been guilty of any want of ordinary care in procuring a switch which was reasonably sufficient. Steinhauser v. Spraul, 127 Mo. 541; Bohn v. Railroad, 106 Mo. 429; Chrismer v. Tel. Co., 194 Mo. 189; Beebe v. Transit Co., 206 Mo. 419. (4) The evidence shows that Leonard Jewell assumed the risk, if any there was, of working with the switch complained of. Blundell v. Mfg. Co., 189 Mo. 552; Bradley v. Railroad, 138 Mo. 293; Jackson v. Railroad, 104 Mo. 448; Holmes v. Brandenbaugh, 172 Mo. 53; Mathis v. Stockyards Co., 185 Mo. 434; Hollingsworth v. Biscuit Co., 114 Mo. App. 20; Harrington v. Railroad, 104 Mo. App. 663; Bohn v. Railroad, 106 Mo. 429; Purcell v. Shoe Co., 187 Mo. 276. (5) The evidence establishes such negligence on the part of Leonard Jewell directly contributing to cause his death as to preclude a recovery on the part of respondent. Chaney v. Railroad Co., 176 Mo. 598; Allen v. Transit Co., 183 Mo. 411.

*Botsford, Deatherage & Creason* for respondent.

(1) Defendant is bound to set up every defense which he may have to the action, and it waives those not pleaded. 1 Ency. Pl. and Prac., 852. (2) By its answer defendant admits that Leonard Jewell was injured either from sparks from the switch or from striking a match. It is bound by that admission. (3) The court is not at liberty, in passing on a demurrer to the evidence, to make inferences of fact in favor of the defendant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury. Buesching v. Light Co., 73 Mo. 231; Toohey v. Frivin, 96 Mo. 109; Soeder v. Railway, 100 Mo. 681; Connoly v. Press Co., 166 Mo. 463. (4) In the absence of evidence to the contrary, the injured party is presumed to be in the exercise of ordinary care at the time of the accident. Smily v. Rybo, 160 Mo. 635; Miller v. Rybo, 164 Mo. 198; Buesching v. Light Co., 73 Mo. 219; Fairgrave v. Moberly, 29 Mo. App. 155; 16 Cyc. 1057. (5) There was abundant evidence to warrant the submission of the question to the jury as to whether or not Leonard Jewell came to his death from burns caused by a spark from the electric switch in the motor house. Dunphy v. Stock Yards Co., 118 Mo. App. 512; Powell v. Railway, 34 S. E. 530, 125 N. C. 370; Ray v. Poplar Bluff, 70 Mo. App. 252; Wise v. Remme, 41 S. W. Rep. 797; Kelly v. Railway, 70 Mo. 604.

JOHNSON, J.—Plaintiff, the widow of Lindsey Jewell, sued to recover damages for the death of her husband which, she alleges, was caused by the negligence of defendant. At the conclusion of the introduction of evidence by plaintiff, the jury, in obedience to a peremptory instruction, returned a verdict for defendant. Afterward, the court granted plaintiff a new trial on the ground that the evidence, aided by certain admis-

sions in the answer, made a case to go to the jury. Defendant appealed from the judgment awarding a new trial.

The injury occurred about eleven o'clock in the forenoon of January 17, 1906, at a powder mill operated by defendant near Kansas City. The plant consisted of some fourteen widely separated buildings. In one, the ingredients of the explosive to be manufactured, i. e., nitrate of soda, charcoal and sulphur, were mixed and taken to the "press" building, where the mixture was pressed into cakes each two feet square and an inch thick. The cakes then were loaded in a tramcar and wheeled to the "corning mill" where they were fed into a series of rollers, revolving towards each other, and were broken into grains. The grains fell into other tramcars and were wheeled to the glaze mill where they were polished. Thence they were taken to the packing house and packed in iron cans. Jewell, an experienced workman, was in charge of the corning mill and was at his post of duty at the time he received the injuries from which he died eight hours later. The machinery in the corning mill was operated by electricity generated at a power house on the grounds and transmitted by wires to the motor house of the corning mill which was at the southwest corner of the mill and from six to twelve feet distant therefrom. This motor house, a small building, contained a ten-horse power, three-phase induction motor. On the wall was a three-blade knife switch and above it safety fuses. The switch was provided with a handle which, thrown one way would turn the electric current into the motor, and thrown the opposite way, would discontinue the current. There was no fire in or about the corning mill or motor house. It required about twenty minutes to convert a carload of cakes into grains. When a carload was converted and the grains sent to the glaze mill, Jewell would go to the motor house and throw the switch to stop the machinery and when another car of cakes came,

he would throw the switch to turn on the current. On an average, he would turn the switch on and off twice every hour while the plant was being run. There were no cakes or granulated powder in the mill when Jewell was injured, but there was powder dust over everything as well as in the air, and this dust, of course, was inflammable and explosive. There was no dust in the motor house but Jewell's clothing and gauntlet gloves were covered with it. No one saw the beginning of the accident. That the unfortunate man was in the motor house and that while there his gloves and clothing were set afire are facts conceded by the pleadings and abundantly established by the evidence. He came out of the motor house ablaze and ran for a hydrant at the north side of the corning building. He might have gone on the west side of that building and if he had, there would have been no explosion as there were no openings in the building on that side, but he ran east along the south side of the building to the corner and then turned north. There were openings in the south side of the mill and as he passed one of them, the wind, which was blowing strongly from the south, carried a spark from his clothing into the mill, an explosion followed and he was fatally burned and injured by the explosion. It is the contention of plaintiff that a spark emitted by the switch while it was being manipulated by Jewell fell on his powder-covered glove and the specific acts of negligence charged in the petition relate to the failure of defendant to provide appliances of common use to prevent the emission or transmission of such sparks.

The switch was "open," i. e., unprotected. Plaintiff says the place of contact should have been immersed in oil so that a spark emitted might be quenched immediately, or that in lieu thereof, the switch should have been enclosed in a dust proof cabinet or box, or that instead of being operated by a handle, it could have been operated in complete safety by a push button or that if operated by a handle, it might have been pro-

vided with a hood or shield between the point of contact and the hand of the operator or finally that the handle which was not over five inches long should have been made longer to remove the hand of the operator farther away from the point of contact. The petition alleges that the death of plaintiff's husband "was caused by the negligence and carelessness of said defendant in this, to-wit:

"1. In that defendant had in operation an open switch, instead of a closed or oil switch; that said triple-pole, knife-blade switch, or open switch, was not a proper, safe, usual or customary switch to be used in and with machinery such as was used at said powder manufactory, but was unsafe and dangerous and that defendant was negligent in using the same; that the proper, usual, safe and customary switch to be used with such machinery, when used in the manufacture of powder is an oil switch, which prevents emission of sparks.

"2. Defendant was negligent in that it did not have an idle pulley on said electric motor in said electric motor house with which to reduce the voltage of said electricity, and thereby prevent the emission of sparks when said open switch was closed and opened.

"3. Defendant was negligent in that it did not have an automatic switch or current breaker, operated by a push button or other means, a sufficient distance away from said open switch to protect plaintiff's said husband when opening or closing same.

"4. Defendant was negligent in that the handle on said switch was only two or three inches in length, when same should have been eighteen inches or two feet in length, so as to have plaintiff's said husband's hand, his person and clothing further away from said sparks when said switch was opened or closed.

"5. Defendant was negligent in not having a hood over said open switch, so as to prevent said sparks from reaching said plaintiff's husband and his clothing when opening and closing said open switch.

"6.   Defendant was negligent in not having said knife-blade switch enclosed in a dust-proof cabinet or box so as to prevent said powder and other combustible particles from coming in contact with said sparks and thereby becoming ignited and causing said burning and explosion, from which plaintiff's said husband died."

It is alleged in the answer that "the said Lindsey Jewell negligently contributed to cause his own death, either by negligently engaging in his work while wearing clothing and gloves which had become filled with powder dust, and by negligently undertaking to operate the switch for turning on or off the current of electricity while wearing gloves which had become covered and filled with powder dust, and by negligently operating said switch and turning the full strength of the current into the motor in such a sudden, quick, careless and unskillful manner as to cause a flash or spark to be emitted at the switch or motor, and by negligently turning on the current while the rheostat of the motor was pushed in, or else the said Jewell negligently contributed to cause his own death by negligently striking a match while wearing gloves and other clothing which had become covered and filled with powder dust; that defendant believes that the said Jewell directly and negligently contributed to his own death in either the one manner or the other just stated, and defendant does not know whether it was the one or the other, . . . that the clothing of the said Jewell caught fire in the motor house of the corning mill in defendant's factory, and that the said motor building was a small building situated to the west and south of said corning mill building," etc.

The argument of defendant that the demurrer to the evidence should have been sustained may be resolved into the following propositions:

1.   That the evidence fails to show any lack of reasonable care on the part of defendant with respect to the switch and its appliances.

2.   That if defendant was negligent in any of the respects claimed in the petition, there is no proof that such negligence was a proximate cause of the injury.

3.   That the risk of injury from working with an open switch was one of the risks assumed by Jewell.

4.   That the contributory negligence of Jewell appears from the evidence to be indisputable.

These propositions will be considered in the order stated.   Among the elementary rules pertaining to the relation of master and servant are these:   That the master is not an insurer of the safety of the servant but is required only to exercise reasonable care to furnish his servant a reasonably safe place in which to work and reasonably safe tools and appliances with which to work; that within the bounds of reasonable care, the master may conduct his business in his own way; that he is not bound to furnish the newest designs and safest types of tools and instrumentalities, but may select from those that are reasonably safe; and that the risks of injury naturally belonging to the employment as conducted by the master, while acting with reasonable care, are risks assumed by the servant. But the greater the natural hazards of the business, the greater the exactions of reasonable care on both master and servant.   What would be reasonable care in one employment might be negligence or even extreme recklessness in another.   The most careful man might not have thought it dangerous to have an open switch in a fire proof office building, but even the most negligent would know it would be extremely hazardous to have a spark-producing switch in the corning room of a powder mill.

We think defendant should not be allowed to hide behind the rule that the master is not bound to provide the safest and best tools and appliances. True, the open switch was not in the corning room, but in the motor house where there was no powder or powder dust. But, the operator was required to come from work in the

corning room at least twice an hour to throw that switch. His clothing and person were sure to be covered with powder dust and it is a fair inference to say that defendant compelled its servant to face a great and wholly unnecessary danger. It appears that as a rule, sparks were emitted and thrown out from the arc whenever the switch was thrown to disconnect the current and with no shield between his hand and the nearby point of contact, it is not at all strange that eventually a spark flew to his person and ignited the powder dust. That ordinary care would have avoided this risk is obvious from the evidence of plaintiff. By the use of any of the safety devices mentioned in the petition, the danger either could have been entirely obviated or at least greatly lessened. The danger was not incidental to the employment but was created by the negligence of defendant.

We pass to the second proposition, *i. e.*, that the evidence fails to show that any negligent act averred was the proximate cause of the injury. Defendant invokes the rule that where the petition alleges specific acts of negligence, the recovery, if had at all, must be upon the specific negligence pleaded. [Orcutt v. Century Building Co., 201 Mo. 424; McGrath v. Transit Co., 197 Mo. l. c. 105; Hamilton v. Railroad, 114 Mo. App. l. c. 509.] The gravamen of the charge in each specification of negligence was the failure of defendant to equip the switch with a device for the protection of the operator from flying sparks. We think plaintiff's burden of proof was satisfied if she produced evidence tending to show that a spark from the switch set Jewell's clothing or gloves afire and that the spark would have been extinguished or arrested had the switch been equipped with any one of the appliances mentioned in the petition. Plaintiff was not required to prove these facts by direct evidence but might prove them by circumstantial evidence. Defendant contends that the

facts and circumstances in proof show that the fire might have been caused either by a spark from the switch as alleged, or by a spark from the fuses, or by a spark from the motor, or by Jewell lighting a match. The jury must not be compelled to resort to conjecture in arriving at the cause of the injury but the burden is on the plaintiff to show, with reasonable certainty, that the cause for which the defendant is liable produced the injury. [Purcell v. Shoe Co., 187 Mo. 276; Warner v. Railway, 178 Mo. 125; Trigg v. Ozark Land Co., 187 Mo. 227; Morgan v. Mining Co., 136 Mo. 241.] Neither should the court resort to conjecture to aid the defense and that is what we should be compelled to do if we indulged the inference that Jewell ignited a match while he was in the motor house. There is no evidence that he had a match; there was no reason for his using one in that place. He knew it would be extremely hazardous to strike a match, covered as he was with powder dust, and it would be most unreasonable to suppose that he would have done a thing so foolhardy. The match theory has no evidentiary foundation and must be rejected.

There is some force in the argument that the evidence does not show definitely that the spark came from the switch but equally supports the inference that it might have come from the fuses or the motor, but the admissions of the answer made it unnecessary for plaintiff to adduce more definite proof. The admission is unequivocal that Jewell's clothing caught fire in the motor house and the alternative admission is made that the spark either came from the switch or that Jewell set his clothing afire by lighting a match. With the latter admission appearing too improbable to receive serious consideration, we say the answer should be construed as admitting that the fire came from the switch and as eliminating from the case the inference that it might have come from the fuses or motor. In this view of the evidence and pleadings, plaintiff has succeeded

in showing the causal connection between the negligence averred and the injury, thus raising an issue for the jury to solve.

The third proposition is answered by the rule in this State that the servant does not assume risks created by the negligence of the master.

Finally, as to the fourth proposition, we do not agree with defendant that the evidence shows indisputably that the spark was caused by negligence of Jewell in not using the rheostat properly or that he should be held chargeable in law with negligence in not removing his gloves before throwing the switch. The evidence does not show positively that the spark from the switch fell on his glove. It could have fallen on his clothing or person and further, Jewell's hand was not in the pathway of the arc, but the spark was a flying particle of metal heated, detached and thrown off by the arc. The switch might be thrown a thousand times without a spark falling on the operator's hand or clothing. "Jewell operated the switch 'every few minutes during the day.' (Respt's brief, p. 11.) According to the testimony he turned the switch on about two times every hour and turned it off as often. He therefore, prior to his death, turned it on 2400 times, and turned it off a like number of times, and there had been no accident happen from it." The danger, though great, was not so certain and imminent that we should say as a matter of law that Jewell should have refused to use an open switch or in the particular instance should have removed his gloves. The classification of his conduct in these particulars was for the triers of fact.

Further, defendant says that Jewell was negligent in not running along the west side of the building in going to the hydrant instead of going as he did past the openings in the corning mill. It would be most unreasonable to hold a man to account for what he might do in such extreme peril. With his clothing on fire, he was under the complete mastery of the instinct of self-

preservation and cannot be condemned for failing to exhibit good judgment. We conclude the learned trial judge did not err in granting a new trial.

Accordingly the judgment is affirmed. All concur.