MARIA RODRIGUES MARQUES, Respondent, v. V. E. KOCK and HENRY KOST, Partners Doing Business Under the Firm Name of KOCH & KOST, Appellants.

Springfield Court of Appeals, December 11, 1913.

1. MASTER AND SERVANT: Mode of Work and Appliances: "Reasonably Safe." Regarding the nature or mode of the performance of any work, the term "reasonably safe" means safe according to the usages, habits and ordinary risks of the business.

2. INSTRUCTIONS: Inconsistent and Conflicting Statements in: Error. In an action for the death of the servant on account of the negligence of the master, an instruction on the duty of the master to provide a reasonably safe place to work, *held* erroneous in that it contained inconsistent and conflicting statements as to such duty.

3. ————: Master's Reasonable Care: Evidence: Erroneous Instruction. In an action for the death of the employee an instruction submitting the issue of the employer's reasonable care in rendering the place of work reasonably safe, is examined and *held* to be erroneous in view of the evidence brought out in the case relative to the usual way adopted by others in similar work.

4. ———: **Master's Duty: Instruction too Abstract.** In an action for the death of the servant due to master's alleged negligence an instruction on the master's duty to furnish a reasonably safe place to work examined and *held* too abstract and general to furnish a proper guide to the jury.

5. ———: **Refusing Additional Ones Requested: Not Error, When.** The refusal to give seven additional instructions as requested, is not error, the court having already given ten instructions at such party's request.

Appeal from Jasper County Circuit Court, Division Number Two.—*Hon. D. E. Blair,* Judge.

Reversed and remanded.

*Mercer Arnold* and *Skidmore & Walker* for appellants.

(1) The court erred in giving respondent's instruction No. 3. This instruction makes appellants insurers of deceased's safety and is bad law. Miles v. Coal & Coke Co., 157 S. W. 876; Saversnick v. Schwarzchild & Sulzberger Co., 141 Mo. App. 509; Hollingsworth v. Biscuit Co., 114 Mo. App. 20; Brunks v. Telegraph Co., 115 Mo. App. 36; Minnier v. Railroad, 167 Mo. 112-113. (2) The unbending test of negligence in methods is the ordinary usage of the business. Titus v. Railroad, 136 Pa. St. 618, 20 A. S. R. 944; Kehler v. Schwenk, 144 Pa. St. 348, 27 A. S. R. 633; Allison Mfg. Co. v. McCormick, 118 Pa. St. 519, 4 A. S. R. 613; Zinc Co. v. Martin, 93 Va. 791, 22 S. E. 869; Bottling Co. v. Theiler, 59 Neb. 257, 80 N. W. 821; 26 Cyc. 1140—1431-1433; Railroad v. Lewis, 110 Va. 847, 67 S. E. 357; Weed v. Railroad, 5 Neb. 623, 99 N. W. 827. (3) Instruction 3 given at the request of respondent is in direct and irreconcilable conflict with instruction "H" given at the request of appellants. Buddenberg v. The Chouteau Trans. Co., 108 Mo. 401; Frank v. Railroad, 57 Mo. App. 181; Berryman v. Cox, 73 Mo. App. 67; Coin v. Lounge Co., 222 Mo. 488; Chrismer v. Tel. Co.,

194 Mo. 189; Railroad v. Holley, 30 Kan. 475; Railroad Co. v. Milliken, 8 Kan. 647; 38 Cyc. 811; McCurry v. Hawkins, 83 Ark. 302; Coal Co. v. Sand Bar Co., 110 Va. 444. (4) Instruction No. 4 on the question of contributory negligence is erroneous because it does not authorize the jury to find against the plaintiff if from the whole of the evidence the deceased was found to be guilty of contributory negligence. Railroad v. Bentley, 78 Kan. 228; Dewald v. Railroad, 44 Kan. 586; Gibson v. City of Wyandotte, 20 Kan. 156. (5) Instruction "P" requested by appellants and refused by the court should have been given. Coin v. Lounge Co., 222 Mo. 506; Smart v. Railroad, 148 S. W. 172; Chrismer v. Tel. Co., 194 Mo. 208; Allison Mfg. Co. v. McCormick, 118 Pa. St. 519; Kehler v. Schwenk, 114 Pa. St. 348; Coal Co. v. Hayes, 128 Pa. St. 294; Labatt's Master & Servant (2 Ed.), sec. 940; 26 Cyc. 1155; Relyea v. Railroad, 112 Mo. 86; Jackson v. Mo. Pac., 104 Mo. 448.

*C. A. McNeill, Chas. Stephens, E. V. McNeil, Lee Shepherd* and *I. N. Threlkeld* for respondent.

(1) Instruction No. 3, was properly given. The adoption and maintenance of imperfect rules are manifestly as negligent as the entire failure to adopt any rules. Griffin v. Stanton, 70 Kan. 764; Harper v. Cement Co., 76 Kan. 612; Lebatt on Master and Servant (1 Ed.), p. 463-4-6; Railroad v. Echols, 25 S. W. 60, 28 S. W. 817. (2) Instructions H and 3 are not conflicting. They are simply instructions given on different phases of the case. (3) The refusal of instruction "P" was not error, because the matters therein contained had already been covered by other instructions. And the court is not bound to give sixteen instructions where there is but one issue. State v. Frazier, 137 Mo. 317; Crews v. Railroad, 19 Mo. App. 302; Buck v. Street Railway, 108 Mo. 179; Blanton v.

Dold, 109 Mo. 64; McCartney v. Insurance Co., 45 Mo. App. 373; Herken v. Briscoe, 47 Mo. App. 196; Hickman v. Link, 116 Mo. 123; Gelven v. Railroad, 21 Mo. App. 273; Catson v. Sedalia, 62 Mo. App. 227.

ROBERTSON, P. J.—Action for death of plaintiff's husband by wrongful act of the defendant. Plaintiff prevailed below and the defendants have appealed.

The petition alleges that on and prior to August 13, 1912, the defendants were excavating in Columbus, Kansas, preparatory to the construction of a sewer and that the plaintiff's husband, Clemente Marquez, was killed on that day by reason of an unexpected explosion of dynamite in the ditch where the plaintiff's husband was working; that plaintiff and the deceased were married about two years prior to the accident; that her husband died intestate and without issue and that no administrator, executor or other legal representative of his estate had been appointed at any place or time and that "the plaintiff is the widow and next of kin of the deceased," and that any sum recovered in this action will inure to her sole benefit. Then follow allegations specifically describing the excavation and that after the excavation proceeded a short depth stone and rock were encountered that could not be removed without blasting and in order to accomplish that end and to expedite the work dynamite was used; "that it was the custom and practice of said defendants to insert a large number of pieces or sticks of dynamite in said holes drilled in said sewer ditch . . . that defendants had drilled about thirty or forty such holes . . . and had inserted in each of the same a large number of sticks of dynamite . . . and same had fuses attached thereto; that said defendants caused the fuses to be lighted and the dynamite fired for the purpose of shooting off and discharging the same, and that on said 13th day of August, 1912, one of the charges so placed by the defendants prior to said time, failed to explode

from the lighted fuse and failed to go off, and the said Clemente Marquez was sent by the defendants, with other employees, to the said ditch to work as a picker and shoveler, and while striking with a pick while at work in the line of his duty as such employee in said ditch, he struck said undischarged and unexploded load and charge of said dynamite, which was covered up and concealed by dirt and rock, which said charge exploded with great and terrible force and violence," thereby killing the plaintiff's said husband. The petition then charges the negligence of the defendants as follows:

"Plaintiff alleges and avers that defendants were guilty of gross carelessness and negligence in that they failed and neglected to keep, maintain and promulgate a reasonable code of rules, plan or system whereby it could, with reasonable certainty ascertain whether or not all of the said charges of dynamite so placed in the various holes as aforesaid had exploded or had been discharged, and in carelessly and negligently failing and neglecting to have and maintain a proper plan or system of inspecting the said sewer ditch and working place at the point where said charges of dynamite had been placed, and in failing to use any reasonable means, system or method for the purpose of ascertaining whether or not all of said dangerous and explosive charges of dynamite theretofore placed therein, had been exploded, and said shots and charges of dynamite were so placed, arranged and fired so that from four to ten of the same would go off at once so that defendants did not know and could not tell how many of said shots had gone off and by reason of such carelessness did not and could not inform the plaintiff and its employees and they could not know the number of shots that had gone off or the number that had failed to go, and had no knowledge or means of knowledge thereof, and said defendant failed and neglected to furnish said Clemente Marquez a reasonably safe place in which to

work, which failure on the part of said defendants caused his death at the time and place and in the manner and by the means aforesaid, all of which facts were to defendants well known, or with the use of reasonable care would have known, and to plaintiff's damage in the sum of $10,000."

The petition alleges that two sections of the 1909 General Statutes of Kansas were, at the time of the accident, and are now in force in said State, as follows:

"Sec. 6014. Action for Death by Wrongful Act— Limitations—Damages. 419. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

"Sec. 6015. When Action may be Brought by Widow or Next of Kin. 420. That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in the next preceeding section is or has been at the time of his death in any other State or territory or when, being a resident of this State, no personal representative is or has been appointed, the action provided in said section may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The defendants' answer contained a general denial and the usual pleas of contributory negligence, assumption of risk and the existence in Kansas of the common law applicable thereto. Plaintiff filed a general reply to the defendants' answer.

The deceased was twenty-four years of age and

about one year older than his wife at the time of his death.

There were from twenty-five to forty men working on the ditch, divided into what were called the drill gang, shot firers and shovelers. The drill gang was in charge of a superintendent or foreman by the name of Bomhoff; George Rich was foreman of the shovelers, and a colored man was the shot firer, though he was sometimes assisted by Bomhoff and others. It was the custom to drill the holes for the dynamite two and a half or three feet deep and about the same distance apart in the bottom and center of the ditch and to load fifty or sixty of these holes with from two to three and a half sticks of dynamite. For each hole the fuse was cut the same length and extended about six inches above the ground preparatory to firing. The fuse lighter and one other person generally commenced in the center of the ditch and worked toward each end when lighting the fuses, which required about two minutes. After the explosions occurred the shot firer and one or both of the foremen would walk along the bank of the ditch and undertake to ascertain from the appearance of the fuses and the ground whether all the shots had exploded. Defendants' testimony was that the usual examination was made after this particular shot but there is a conflict in their testimony and that part of plaintiff's testimony as to when the string of shots, in which was this unexploded one, was fired. Plaintiff's testimony tended to prove that they were fired at the noon hour, just after the men had gone off of the work, on the day on which the accident occurred and that upon going to work after noon the foreman of the shovelers' gang ordered them to proceed into the ditch and go to work.

Plaintiff offered testimony tending to prove that the usual method adopted and employed by others engaged in the same line of business and using explosives of this character in this kind of work, was to cut the

fuse into different lengths causing the shots to explode at different intervals so that it could be ascertained when all of the shots had exploded. In behalf of the defendants the testimony tended to prove that such a method would not accomplish the end contended for by plaintiff because different pieces of fuse burned at a different rate, and that the adoption of that method would not enable them to ascertain when all of the shots had been fired, or to distinguish the shots, and for the further reason that often one shot would explode another. Also, that the method they had adopted was the usual and customary method adopted by all those engaged in the same line and character of work which they were doing when plaintiff's husband was killed.

At the time plaintiff's husband was killed he was using what is called a mattock and the defendants' testimony tended to prove that they were not expected to use this tool nor a pick for the purpose of loosening the solid ground or rock, but that the shovelers were placed in the ditch solely for the purpose of shoveling out the loose dirt. On the other hand, plaintiff's testimony tends to prove that the employees uniformly used both of these tools at their own pleasure for digging in the solid earth. Defendants introduced testimony to the effect that the employees had strict orders not to use these tools in the manner aforesaid, but there is abundant testimony tending to prove that no such orders were ever sought to be enforced.

There is no testimony tending to prove that the deceased left surviving him no children.

At the conclusion of the testimony the court, after giving instruction No. 1 in behalf of plaintiff upon the whole case following the charges of the petition, and instruction No. 2 defining ordinary care and negligence, gave instruction No. 3 in behalf of plaintiff as follows:

"3. You are instructed that when an employer of servants is engaged in a business that is in its nature and character hazardous and dangerous a casualty occurs which could reasonably have been foreseen and such employer or master might have reasonably adopted and promulgated a plan or system of rules that would have rendered the place reasonably safe and would *probably* have prevented the casualty, but such master or employer fails and neglects to so adopt such plan or system of rules, he would be liable to a servant or another injured or damaged by reason of such neglect or failure, if it was the proximate cause of the injury, and that notwithstanding the fact that others engaged in the same general line of business may not have adopted any such plan or system of rules."

The instructions in behalf of the defendants covered (A) the theory of a mere accident, (B) assumption of the risk, (C) hidden or improbable dangers, (D) that defendants were not insurers of the safety but only required to exercise ordinary care, (E) that negligence is never presumed and that the fact of the explosion alone did not raise the presumption of negligence, (F) that if orders were given not to dig or pick in the solid ground, or to use a pick or mattock in the loose rock, or to use a pick or mattock about or near unexploded shots, that it was the duty of plaintiff's husband to obey such instructions, and if his death was caused by reason of his failure in that respect the verdict should be for the defendants, (G) if the deceased was given orders not to use the mattock or pick in the sewer ditch and violated such orders and was injured as a result thereof, the plaintiff could not recover. Instruction H. was given, at the request of the defendants, reading as follows:

"You are instructed that if you find from the evidence that after the firing of the round of shots, preceding the explosion, which caused the death of deceased, which were fired in the trench where deceased

was engaged to work, and before the explosion that killed deceased occurred, the defendants had inspected said trench with reasonable care to determine whether or not any shots had misfired in order to remove the same or guard against injury from the same if any. remained unexploded, and that such inspection was the usual and ordinary manner employed by persons of ordinary prudence engaged in that line of business to determine the presence of unexploded shots, then the defendants are not liable to the plaintiff for the death of deceased, even though such inspection failed to reveal the presence of an unexploded shot which afterwards exploded and caused the death of the deceased.''

Instruction 1 is on the question of the credibility of the witnesses.

The defendants requested the court to give instructions numbered from J to P, inclusive, which were refused.

Instruction No. 3 given in behalf of the plaintiff and instruction H given in behalf of the defendants are alleged by appellants to be in conflict and so we think they are, and that No. 3 contains inconsistencies within itself, the latter part of it being in conflict with the first part thereof. The rule in this State is that, ''In regard to the . . . nature of the mode of the performance of any work 'reasonably safe' means safe according to the usages and habits and ordinary risks of the business. . . . No man is held by the law to a higher degree of skill than a fair average of his profession or trade and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same and however strong they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed.'' [Coin v. Lounge Co., 222 Mo. 488, 506, 121 S. W. 1.]

The first portion of instruction No. 3 proceeds on the theory that if defendants could reasonably have foreseen the accident which happened and might have reasonably adopted and promulgated rules that would have rendered the place reasonably safe, but failed in that regard, then they were liable. "Reasonably," as used in this instruction, is a relative term to be determined by the facts and circumstances in this particular case and one of the tests, as repeatedly laid down by the Supreme Court of this State and as above quoted, to determine when an employer has exercised reasonable judgment is by the standard of what is usual and ordinary in the same line of business. For the jury to determine whether the defendants could reasonably have foreseen the dangers and have reasonably adopted rules that would have prevented the injury complained of, they had a right to determine that fact by taking into consideration what was usually and ordinarily done by those engaged in the same line of business. This is a rule that adjusts itself to all lines and character of businesses, however free from danger or fraught with hazards. The rule does not tend to discourage progress or improvements, because the man who adopts a better method than others engaged in the same line of business could not under that test be held to be guilty of negligence, nor can the rule be made more than evidential to be considered by the jury in each given case. [Brunke v. Telephone Co., 115 Mo. App. 36, 39, 90 S. W. 753.] The latter part of instruction No. 3 eliminates the very elements which the jury had a right to consider in arriving at their conclusion under the first proposition therein contained.

Not only is instruction No. 3 erroneous for the reasons above noted, but for the additional reason that the plaintiff voluntarily introduced testimony to a considerable extent on the question of the usual and ordinary way commonly adopted for firing shots by others engaged in the same kind of business as defendants;

and even though the closing portion of instruction No. 3 might be good law under ordinary circumstances, it was error to give it in this case as that issue was invited and invoked as a test by the plaintiff to convict the defendants of negligence and met by the defendants with testimony to the contrary.

Instruction No. 3 is also too abstract and general to furnish a proper guide to the jury. The jury should not be left to speculate as to what plans or system of rules might be adopted so as to make the work reasonably safe, but the instruction should point out the one or more safe plans or system of rules, if any, which the evidence tends to show were reasonably safe and which might have been adopted to prevent the injury, and confine the jury to a consideration of such designated plans or system of rules in determining defendants' negligence, and to such as come within the issues made by the pleadings.

The defendants complain of the refusal of the court to give seven instructions requested by them, but as the court did give ten instructions in their behalf, we are of the opinion that they are not entitled to further consideration on the subject of instructions if they were not able to incorporate in that number of instructions given the various matters they desired to have called to the special attention of the jury.

It has been noted that this suit is by the widow as an individual and that the petition herein alleges that the deceased left no children; that plaintiff is his widow and all damages recovered will inure to her; that no personal representative of the estate has been appointed. These allegations were all proven except as to there being no children. Much is said by counsel in their briefs and argument as to the right of the widow as an individual, and especially when claiming as her own all damages to be recovered, to maintain this suit in the absence of proof that there are no children. It is evident that if there are surviving children

the damages should be all recovered in one action for the benefit of both such widow and children.

No case cited from Kansas, or Oklahoma, which has a similar statute, is in point. We are reluctant to construe a statute of a sister State, except when necessary, preferring to leave that to the courts of such State. We think it unnecessary in this case for us to express any opinion on the Kansas statute. The failure to make proof in this case that there were no children seems to have been an oversight on the part of the plaintiff. Should the case be retried this proof will likely be made. Should it be shown that there are surviving children, the plaintiff can obviate all objections upon this subject by amending her petition so as to sue for herself and as trustee for such children.

The instruction on the measure of damages is based on the theory that there are no children and that the plaintiff is entitled to all damages recovered. This is unobjectionable should the proof show such to be the fact and can be modified on a retrial if the proof shows otherwise.

We have examined all of the other points insisted upon by the appellants and consider that their importance does not justify further consideration.

The errors above noted in the instructions necessitate a reversal of the judgment, which is accordingly reversed and the cause remanded. *Sturgis, J.,* concurs. *Farrington, J.,* concurs.