## SHERMAN G. MELCHER, Respondent, v. FREE-HOLD INVESTMENT COMPANY, Appellant.

### Springfield Court of Appeals, March 20, 1915.

1. **PLEADINGS: Admissions by Answer.** Action for personal injuries by the operator of an electrically operated elevator. The answer alleged that if the accident occurred it was caused by lightning. The jury found that it did occur. It is treated as established that lightning was the cause.

2. **MASTER AND SERVANT: Injuries from Electricity: Ordinary Care.** In cases based on injuries caused by electricity, ordinary care is the highest degree of care and the exercise of ordinary care exacts the use of such reasonable precautions as may be exercised in the use of such appliances and devises as are reasonably available to that business.

3. ———: **Injuries from Electrical Shock: Lightning Arresters: Jury Questions.** Action for damages for personal injuries sustained by the operator of an elevator operated by electricity from an electric shock caused by lightning. Evidence considered sufficient to warrant the submission to the jury of the question whether or not the master was negligent in not equiping the building with lightning arresters.

4. ———: **Injuries from Electricity: Duty of Master to Install Lightning Arresters.** Regardless of custom and usage, it is negligence on the part of an employer to fail to install a lightning arrester to protect the operators of its electrical elevators from lightning shocks, since electricity is such a subtle and dangerous force.

5. ———: **Place of Work: Master's Duty Concerning: Reliance by Servant.** Action by the operator of an elevator operated by electricity for injuries occasioned by a lightning shock. It appearing that it was not a part of plaintiff's duty to give any attention to the equipment or mechanism of such elevator, it was *held* out to him as a safe place to work and he had a right to assume that the master had done his duty in making it safe.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson,* Judge.

AFFIRMED.

*John T. Craig, Samp. Jennings* and *John P. Mc-Cammon* for appellant.

(1) This case both on the petition and on the evidence, rests on the *res ipsa loquitur* doctrine; and the circumstances shown are such that the mere fact of the occurrence of the accident is no proof of negligence. A servant can invoke the *res ipsa loquitur* doctrine in those cases alone, "where the injury arose from some condition or want that is in its very nature so obviously destructive of the safety of persons or property ,and is so tortious in its quality, as in the first instance at least to permit no inference save that of negligence." McGrath v. Transit Co., 197 Mo. 94 S. W. 872; Hamilton v. Railroad, 123 Mo. 619, 100 S. W. 671; Cothron v. Packing Co., 98 Mo. App. 349. (2) The master is not bound to use the latest, or best or any particular device or means. He has performed his duty when he adopts that in general use. Beckman v. Brewing Ass'n., 98 Mo. App. 555; Coin v. Lonnge Co., 222 Mo. 188, 121 S. W. 5; Bohn v. Railroad, 106 Mo. 433-4; Berning v. Medart, 56 Mo. App. 449; Turner v. Haar, 114 Mo. 346-7; Chrisman v. Bell Tel. Co., 194 Mo. 189, 92 S. W. 378; Robinson v. Railroad, 133 Mo. App. 101, 112 S. W. 735; Sager v. M'n'g. Co., 162 S. W. 762. (3) The term "reasonably safe" within the rule requiring the employer to adopt a reasonably safe manner of doing work, means safe according to the usages and habits and ordinary risks of the business and employers need not adopt a better or less dangerous way. Marquez v. Koch, — Mo. App. —, 161 S. W. 648. (4) The usual way adopted by those in the same business is the test of reasonable care. Savershick v. Swarzschild et al., 141 Mo. App. 509, 125 S. W. 1192; Brand v. Car Co., 213 Mo. 698, 112 S. W. 511; Bohn v. Railroad, 106 Mo. 433; Steinhauser v. Spraul, 127 Mo. 562; Minnier v. Railroad, 167 Mo. 112; Robbins v. Mining Co., 105 Mo. App. 81; Sager v.

Mining Co., 162 S. W. 762. (5) It was not shown by the testimony that a lightning arrester would have prevented plaintiff's alleged injury, even if there had been one on the building. Labatt, Master & Servant, p. 2501-6; Glick v. Railroad, 57 Mo. App. 97; Yarnell v. Railroad, 113 Mo. 370; Slate v. Lackland, 136 Mo. 26; Bank v. Railroad, 98 Mo. App. 335. (6) No testimony showed the plaintiff was shocked by a current from the controller rather than a stroke of lightning direct. Warner v. Railroad, 178 Mo. 134; Smart v. Kansas City, 91 Mo. App. 586; Epperson v. Telegraph Co., 155 Mo. 346; Candle v. Kirkbridge, 117 Mo. App. 412, 93 S. W. 868; Goransson v. Mfg. Co., 186 Mo. 307, and authorities there cited in support; Warner v. Railroad, 178 Mo. 134, 77 S. W. 67; Rogers v. Packing Co., 166 S. W. 881-3; Morgan v. Mining Co., 136 Mo. App. 298, 117 S. W. 91; Browning v. Railroad, 106 Mo. App. 729, 80 S. W. 591; Caudle v. Kirkbride, 117 Mo. App. 412, 93 S. W. 868; Thornberry v. Mining Co., 126 Mo. App. 660, 105 S. W. 659; Trigg v. Ozark Land Co., 187 Mo. 227, 86 S. W. 222.

*C. O. Hamlin* and *Hamlin & Seawell* for respondent.

(1) The undisputed facts are that plaintiff stepped into the elevator, took hold of the lever, received the shock and was unconscious for more than an hour, and has suffered from that time to the present. Negligence like any ultimate fact in issue, may be established as well by reasonable inferences from other facts as by more direct means of proof. Blanton v. Dodd, 109 Mo. 64, 75. (2) In this case Blanton was in the employ of the defendant, as a laborer. We concede that as a general rule the doctrine of *res ipsa loquitur* does not obtain where the relationship of master subsists, but there is an exception to that rule and this case falls clearly within the exception. Thompson

v. Railroad, 243 Mo. 354. (3) The manner in which the elevator and building were protected against electricity in the case at bar, was known to the defendant, and it was chargeable with knowledge as to the effect of an overload or lightning coming in over the wires. Gibbs v. Hill, et al., 142 Mo. App. 19. (4) Proof of the injuries, that plaintiff was rightfully where he was at the time, the shock, conclusively shows the negligence of the defendant and shifts the burden on it to relieve itself from liability, by showing that the injury was caused by some force over which it had no control, or, for which it was not responsible. Geisman v. Electric Co., 173 Mo. 654; Ryan v. St. Louis Transit Co., 190 Mo. 621; Van Treba v. Gaslight Co., 209 Mo. 648; Delahunt v. United T .& T. Co., 114 Am. St. 958. (5) Defendant was negligent in failing to install lightning arresters. Southern T. & T. Co. v. Evans, 116 S. W. 418; Southern Bell T. Co. v. McTyer, 137 Ala. 601; 34 South 1020, 97 Am. St. 62; Griffith v. New England T. & T. Co., 72 Vt. 441, 48 Atl. 643, 52 L. R. A. 919; Exans v. Ky. T. & T. Co, 124 Ky. 620, 99 S. W. 936, 30 Ky. Law 833; 1 Joyce on Electric Law, 445F.

ROBERTSON, P. J.—Plaintiff recovered judgment, as the result of a jury trial, on account of personal injuries and defendant has appealed. On June 16, 1912, the plaintiff was employed by the defendant in operating its electrically propelled passenger elevator in Springfield, being in what is known as the Woodruff building, an office building ten stories in height. The plaintiff was at work on the night of the 16th, his duties being to run the elevator and oversee the janitors. About one o'clock on that night he heard what he supposed was something crash on one of the upper floors and upon entering the elevator, for the purpose of going up, and in taking hold of the lever by means of which it was put in motion he received

a shock which knocked him over onto the floor of the elevator in which position he lay unconscious something over one hour. No objection is made in the appellant's brief as to the amount of the verdict. The night on which the accident occurred was a stormy one accompanied with considerable lightning. The electricity to operate the elevator is received from a power plant elsewhere than in the building and was carried by wires in metal conduits to the motor which operates the elevator. These conduits are grounded to the water and steam pipes in the building. The elevator and motor were also grounded. At places along the wires there were fuses and on the morning after the accident when the defendant's electrical engineer went to work he "found one fuse blown out. It was the one on this elevator." The wires for the elevator carry a voltage of about 500, direct current. A great deal is said in the testimony about the controller box of the elevator, but such testimony was directed to the box itself, the various details of which were before the jury and the witnesses referred to the parts thereof which are not so identified in the record as to make the testimony intelligible to us. This, however, is not material under the view we take of the case as the defendant in its brief does not make any point on the ground that the plaintiff did not receive any shock or injuries. The plaintiff proved the shock and his injuries and rested. The defendant then introduced the testimony relative to the method of wiring the building, went into the question that lightning arresters were not practicable nor in general use in a building of this character on the electrical wires used in operating an elevator. The defendant's electrician testified that he was not posted on the latest and best improvements along electrical lines. He also testified that a conduit is better than a lightning arrester but later stated that a lightning arrester might be better than a

Melcher v. Freehold Investment Co.

conduit in some instances. Another electrician testified in behalf of defendant that it was not customary to use an arrester inside of a building like this. He also testified that this building was a first class one and that the highest degree of care is used in a building of that kind. Another electrician in behalf of defendant testified generally to the same facts but he did, speaking of excessive electrical charges, state that there was nothing other than fuses that he knew of definitely for breaking the current but later he refers to *modern* protection by arresters. He said that lightning arresters were considered the best protection against lightning. Another witness in behalf of defendant stated that, as a protection lightning arresters are the best precaution against lightning known to the electrical profession, although he stated they were not used on buildings of the nature of this one or on a motor installation.

The plaintiff in rebuttal introduced witnesses who testified that lightning arresters were an absolute protection against lightning and were in use generally in other cities in buildings of this kind and that they are considered the best appliance for that purpose. One witness testified that they were used in another building in Springfield.

The plaintiff's petition alleges the situation and conditions under which the plaintiff was working for the defendant. It alleges that it was the duty of the defendant to furnish him a safe place in which to work but the defendant negligently failed to discharge this duty in that they failed to furnish an elevator which was safe to transport him in because that the accident occurred, alleging the manner in detail. To this petition the defendant answered by a general denial and by a plea as follows:

"Defendant further alleges and says that at the time the said injuries are alleged to have been sus-

tained by plaintiff there was a very severe thunderstorm and that the lightning was very severe and that any injury suffered by plaintiff was the result of a bolt of lightning, against which there is no mode of construction of elevator or device to defend or protect, and that the danger of receiving a shock in the operation of an elevator is a danger incident to the operation of the same and could not by any device known to science be altogether prevented.''

At the close of the testimony the court instructed the jury at the request of the plaintiff, in substance, that if the defendant negligently permitted the lever of the elevator to become charged with electricity to such an extent as to become unsafe and dangerous but used by the plaintiff in the ordinary discharge of his duty and that plaintiff was injured by reason of such negligence that then the verdict should be for the plaintiff. On behalf of plaintiff the jury was further instructed that although they might find that the injury was caused by lightning conducted to plaintiff by taking hold of said lever, as aforesaid, yet the defendant would be liable if the jury found that the defendant failed and neglected to use ordinary care and prudence to prevent lightning of said character from entering said elevator and lever. The defendant requested and was given instructions telling the jury that it was its duty to use only reasonably safe equipment and appliances for the protection of its employees in the operation of its elevator and that if the defendant did provide such devises as are commonly used by reasonably prudent men in the exercise of ordinary care in similar buildings then the verdict should be for the defendant even though they might believe there was some other device or appliance later or additional to those provided by defendant, also that the defendant was not liable unless it was negligent in failing to provide such appliances to prevent accident as a reasonably pru-

dent person in the exercise of ordinary care should have provided. Also at the request and in behalf of defendant the jury was instructed that before they could find for the plaintiff they must find that the defendant was negligent; that is, that defendant failed to do something that a reasonably prudent man would do under similar circumstances and conditions and which negligence was the direct cause of plaintiff injuries; and that its negligence cannot be established by conjecture or supposition.

The general rule that the mere happening of the accident does not raise the presumption of negligence in an action by a servant against his master, is held in the case of Hammilton v. The Kansas City Southern R. Co., 123 Mo. App. 619, 100 S. W. 671, cited by us in the case of Cody v. Lusk, 171 S. W. 624, 626. In the *Hammilton case* is discussed the exception to the rule and the reason for its application. The respondent has cited Thompson v. St. Louis Southwestern R. Co., 243 Mo. 336, 148 S. W. 484; Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S. W. 654; Von Trebra v. Laclede Gaslight Co., 209 Mo. 648, 108 S. W. 559; Ryan v. St. Louis Transit Co., 190 Mo. 621, 89 S. W. 865; Gibbs v. Poplar Light & Power Co., 142 Mo. App. 19, 125 S. W. 840. An examination of each of these cases will disclose that there may be a distinction between the facts there disclosed and those involved in this case. Whatever may be said of those cases it appears to us that it has not been clearly established in this State that the rule of *res ipsa loquitur* applies to injuries received by a servant in his work with electrical machinery caused by the presence of an unusual amount of electricity, although this court in the *Gibbs case,* supra applied the doctrine as to a stranger, but whether it should be applied to a servant who may know no more about the appliances than a

189MA12

stranger it is not necessary for us to decide, and we shall, therefore, leave the question as we find it.

In the case at bar we believe that the question of negligence is involved in this case, as in the *Cody case*, supra, not by reason of any presumption but because of the proof. In a recent case, Kelly v. City of Higginsville, 171 S. W. 966, the Kansas City Court of Appeals on much weaker proof than here concluded that negligence was shown, although the rule of *res ipsa loquitur* is also there applied. That was, however, a case in which the right of an employee was not involved.

In the case at bar it is clear that by reason of one of the fuses on the wire leading to the elevator being burned out on the morning of the accident that some unusual current of electricity had passed through it. In fact the defendant alleged in its answer that if the accident occurred it was caused by lightning and as the jury has found that it did occur we must hold, under the answer that lightning caused it. [Jewell v. Excelsior Powder Mfg. Co., 143 Mo. App. 200, 210, 127 S. W. 598.]

It is evident that if at the time when the current passed through the wire and burned the fuse out there had been some other devise which would have arrested or diverted the current that then the accident would not have occurred. We are, hence, led to a point where we must determine whether or not there was any testimony tending to prove that the defendant was negligent in not having what is known as a lightning arrester at the point where the fuse was located or at some other place where the progress of such an unusual current might have been broken or diverted. In all of the cases which discuss injuries caused by electricity, stress is laid upon its extremely dangerous and subtle nature and the importance of exacting the duty of exercising the highest degree of care to prevent causing

injury by it. Ordinary care in cases of this character appears to be the highest degree of care, and the exercise of that degree of care exacts the use of such reasonable precautions as may be exercised in the use of such appliances and devises as are reasonably available to that business. [See also Davenport v. King Electric Co., 242 Mo. 111, 123, 124, 145 S. W. 454.] All of the witnesses in this case, both for the defendant and the plaintiff, recognize that there is known to the science of electricity what is called lightning arresters and it appears to be conceded by all of the witnesses that this is more efficient than fuses. The only point upon which they differ is that of the places in which they are used. Some testified that they were in general use about power houses, sub-stations and for the protection of machinery. It was not undertaken to be shown why, if they were a success in those places, to protect machinery they could not be used in, or about, this building and we are unable to understand why if a party fails to use them in a building where electricity is used for operating an elevator, in which thousands of people are transported daily, he should not be held negligent for not installing them there, even in an action by an employee who operates the elevator. We hold that the fact that the defendant did not take such precaution against lightning made an issue of negligence for the jury. [Jewell v. Excelsior Powder Mfg. Co., 143 Mo. App. 200, 209.]

The appellant urges that its duty should be determined by general usages and custom of those engaged in the same or similar business, and refers us to our opinions in Sager v. Samson Mining Co., 178 Mo. App. 503, 514, 162 S. W. 762, and in Marques v. Koch & Kost, 176 Mo. App. 143, 153, 161 S. W. 648, but that rule is eliminated from this case by the facts which tend to prove that the custom prevails of using these arresters along wires in buildings where elevators

are used and upon these facts the defendant secured an instruction. The jury resolved the question against defendant. It is said there are exceptions to this rule. [O'Dowd v. Wabash Railroad Co., 166 Mo. App. 660, 669 and 670, 150 S. W. 729.]

The case at bar involves not so much a question of custom and general use as a question of the failure to use a well-known and perfect device in or about an extra hazardous instrumentality. To hold that defendant shall not respond in damages for injuries inflicted by reason of its failure to use a well known device to protect its employee in charge of its elevators from deadly and unusual currents of electricity carried by its wires would be subscribing to a doctrine that is countenanced by no authority to which we have been cited and a rule that we think should not be established.

In the case of Ridenour v. Wilcox Mines Co., 164 Mo. App. 567, 592, 147 S. W. 852, it is said:

"In all occupations attended with great and unusual danger, the master must use all appliances readily obtainable which are known for the prevention of accidents, and the neglect to provide such readily obtainable appliances is proof of negligence."

It was no part of plaintiff's duty to give any attention to the equipment of or to the mechanism that operated this elevator and, therefore, it was held out to him as a safe place in which to work. [Combs v. Rountree Construction Co., 205 Mo. 367, 384, 104 S. W. 77.]

The duty being imposed on defendant to use the high degree of care demanded for the protection of the public, as held in all of the appellate courts of this State, the plaintiff had a right to assume, in accepting and performing this work that this duty had been discharged and his safety guaranteed commensurate therewith.

The judgment is affirmed.

*Farrington, J.,* concurs and files a separate opinion. *Sturgis, J.,* concurs.

## CONCURRING OPINION.

FARRINGTON, J.—I concur in the affirmance of the judgment for the following reasons:

The fact has been found by the jury that the plaintiff received a shock of electricity from the handle of defendant's elevator controller while in the exercise of ordinary care for his own safety.

The fact appears from the record that no building of the character of defendant's building is shown to have ever been supplied with lightning arresters which fact is testified to by architects as to what specifications for such buildings include, as well as from the testimony of engineers that a lightning arrester is used on no other buildings except power houses, telegraph and telephone buildings, and places where electrical machines and instruments are in use. The testimony of one witness is to the effect that a lightning arrester was placed on a public building at Gary, Indiana. The specifications for that building, however, did not call for this appliance. Nor does the testimony show that lightning arresters absolutely prevent lightning from entering a building on wires where such arresters have been provided.

The law in this State, beginning with the case of Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, which has been followed in numerous other cases, places the duty on a user of electricity to exercise the highest degree of care to prevent its escape from his equipment to the damage of others. The "highest degree of care" has been defined in a number of opinions as requiring the user of electricity to exercise the utmost practicable means

of keeping the dangerous current within its proper channels. [Winkelman v. Kansas City El. L. Co., 110 Mo. App. 184, 85 S. W. 99.] As to the duty imposed on the user of electricity in Missouri, it is held that he must use the "utmost care"—the "highest care"— "extraordinary care;" that is, as said in Geismann v. Missouri-Edison El. Co., 173 Mo. 654, 678, 73 S. W. 654, "  .  .  . it was defendant's duty, in the first place, to use every protection which was reasonably accessible to insulate its wires at the point of contact or injury in this case, and to use the utmost care to keep them so, and the fact of the death of Geismann is conclusive proof of the defect of the insulation and negligence of the defendant,  .  .  ." [See, also: Ryan v. St. Louis Transit Co., 190 Mo. 621, 89 S. W. 865; Trout v. Laclede Gaslight Co., 151 Mo. App. 207, 132 S. W. 58; s. c., 160 Mo. App. 604, 140 S. W. 1198; Moran v. Corliss Steam-Engine Co. (R. I.), 45 L R. A. 267.]

A lightning arrester is a well-known device to users of electricity, used for the purpose of preventing excessive charges of static electricity from being conveyed over the wires into buildings where electrical apparatus is contained and used.

It is well known that static electricity or lightning during a thunderstorm is likely to get on wires carrying manufactured electricity.

Defendant contends that its machinery was in such shape that the direct current used for the purpose of operating the elevator could not escape.

The evidence discloses that at the time plaintiff was shocked there was a thunderstorm in progress and that there was much lightning and thunder. The further fact that there was a flash of lightning just as plaintiff put his hands on the controller, and the fact that a fuse was found "blown out" on this elevator, is evidence from which it can reasonably be

inferred that the shock received by the plaintiff was the lightning and that it came in over the defendant's wires. Had a lightning arrester been placed on defendant's wires it was fairly a question of fact for the jury under the evidence whether it would have tended to prevent the lightning which had gotten onto the wires from entering the building; and as there was evidence to the effect that it would tend to divert the lightning from the building and from the place where plaintiff was working in the course of his duties, it therefore became a question of fact for the jury to determine whether in the exercise of the highest degree of care defendant would have failed to take the precaution which was a practical and well-known preventive.

The fact that defendant's evidence tended to show that others engaged in the same line of business, to-wit, operating office buildings, do not put lightning arresters on their buildings, does not furnish an unbending test of due care where it is necesary to measure the *highest* degree of care. The cases cited by appellant laying down the rule that a defendant cannot be held negligent where the evidence shows that he conformed to the ordinary usages and methods employed by those engaged in the same line of business are all cases where such defendant was only to be held to the exercise of ordinary care, and not to the exercise of the utmost or highest degree of care. One reason for this is that in exercising ordinary care to make a place reasonably safe a master does not have to use the latest and most approved appliances so long as the appliances he uses are reasonably safe, and in determining whether he has exercised ordinary care in making the place reasonably safe his conduct is to be measured by the conduct of those engaged in the same line of business. [Coin v. Talge Lounge Co., 222 Mo. 488, 121 S. W. 1; Bohn v. Railway Co., 106 Mo. l. c.

433, 17 S. W. 580; Chrismer v. Bell Telephone Company, 194 Mo. 189, 92 S. W. 378; Sager v. Samson Mining Company, 178 Mo. App. 503, 162 S. W. 762.] But where the law places on a person the duty of exercising the highest practicable degree of care, he must employ every well-known device and exert every well-known precautionary measure to fulfill his duty. His conduct, therefore, is not measured by what some one else does, but by what he or some one else should do in the particular situation, in order to bring himself up to the standard that the law fixes and requires. This rule is recognized in the case of Coin v. Talge Lounge Co., 222 Mo. 488, l. c. 506, 121 S. W. 1. The court, however, in that case found that the evidence did not justify a finding that the employment was extra hazardous. I therefore am of the opinion that the cases cited by appellant—holding that one's conduct should be measured, in determining whether he has exercised ordinary care, by the conduct of those engaged in the same line of business—do not apply in the case before us; and that it was a question of fact for the jury to determine whether this defendant had exercised the highest degree of care. The jury found there was a failure in this respect and there is substantial evidence to sustain such finding. I concur in affirming the judgment. *Sturgis, J.,* agrees with the views herein expressed.